**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

| | |
|---|---|
| AFFINITY LABS OF TEXAS, LLC,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | Civ. A. No. 08-00164-RC |
| ) | |
| BMW NORTH AMERICA, LLC, *et al.*,  ) | |
| ) | |
| Defendants.  ) | |
| ) | |

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC. REGARDING INEQUITABLE CONDUCT

Accusing someone of inequitable conduct is an extremely serious claim. It is on par with accusing a trial attorney of lying to a Court. It is for this reason that the Federal Circuit has recently set forth a heightened pleading requirement and continues to admonish lawyers that accusing a party of fraud on the Patent Office should be reserved for the rare case, as opposed to the standard-pleading plague on the judiciary that it sometimes becomes. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326, 1328-29 (Fed. Cir. 2009); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1182 (Fed. Cir. 1995).

This case reflects the type of inequitable conduct claim that unnecessarily bogs down the legal system and has led to the Federal Circuit's frustration. Of the five defendants accused of infringing U.S. Patent No. 7,634,228 (the "'228 Patent") in the two related cases before this Court, only Defendant Volkswagen Group of America, Inc. ("VWGoA") maintains an allegation that Plaintiff Affinity Labs of Texas, LLC ("Affinity") committed inequitable conduct. VWGoA's inequitable conduct theory is based entirely on the fact that the following two documents were not provided to the examiner during the prosecution of the '228 Patent:

1. A November 9, 2009 Order granting the VWGoA *inter partes* reexamination request of the '833 Patent (the "November 9 Grant");[1] and

2. The motion for summary judgment regarding the '833 Patent filed by JVC/Kenwood in the related -171 action on September 23, 2009.  (*See* C.A. 9:08-cv-00171-RC, Doc. No. 148)

    To cut to the chase, it is impossible as a matter of law for VWGoA to prove inequitable conduct because the Patent Office informed Affinity that documents such as orders granting reexamination requests and litigation positions of parties would not be considered.  VWGoA would have to prove that the inventors and prosecutors chose to withhold these documents for the purpose of deceiving the Patent Office, *i.e.*, to commit fraud.  To accomplish that, VWGoA must prove that the inference of deceptive intent by the '228 inventors and prosecutor is "the single most reasonable inference able to be drawn from the evidence" relating to the non-disclosure of the documents.  *Star Scientific, Inc.* v. *R.J. Reynolds Tobacco Co.,* 537 F.3d 1357, 1366 (Fed. Cir. 2008).  That cannot be done because of the following:

- November 9 Grant:  Even assuming *arguendo* that the individuals involved in the prosecution of the '228 Patent were aware of the November 9 Grant during the window between the issuance of that Grant (on 11/9/09) and the issuance of the '228 Patent (on 12/15/09), there is no possibility of intent to deceive because the examiner had previously told them not to submit orders granting reexamination requests.  Consistent with that instruction, the examiner lined through a prior order granting a previous reexamination of the '833 Patent, indicating it was not a document that he would consider.  Simply put, it is impossible to predicate a finding of intent to deceive based on complying with the examiner's instruction not to submit orders granting reexamination requests.

- JVC/Kenwood Summary Judgment Motion:  Likewise, the examiner instructed the applicants not to submit litigation pleadings, including summary judgment motions; the examiner only wanted to see substantive rulings from the Court.  Again, it is impossible to predicate a finding of intent to deceive based on complying with the examiner's instruction.

    That VWGoA stands alone on this claim of inequitable conduct is not surprising; on this record it is not reasonable to make any inference of intent to deceive, and as a matter of law there is no way that such an inference could be "the single most reasonable inference."  VWGoA's defense

---

[1] *See* Exhibit A attached.

of inequitable conduct is therefore ripe for summary judgment.  Moreover, VWGoA has refused

multiple requests by Affinity to voluntarily dismiss this baseless claim, which necessitated the filing

of this motion.  Accordingly, the Court should find that this case is an exceptional one with respect

to the issue of inequitable conduct, and award reasonable attorneys' fees and costs to Affinity on

this issue.

### Relevant Procedural History

On December 14, 2009, the Court granted Affinity leave to amend its Complaint in this case

to assert infringement of United States Patent No. 7,634,228 (the "'228 Patent"), which issued on

December 15, 2009, and is entitled "Content Delivery System and Method."  (*See* Doc. No. 322).

Affinity filed its Third Amended Complaint on December 15, 2009, the day the '228 Patent issued.

(Doc. No. 323, Third Amended Complaint, ¶ 22).

On January 15, 2010, VWGoA filed its answer to Affinity's Third Amended Complaint, in

which VWGoA alleged as its Fifth Affirmative Defense that the '228 Patent is unenforceable for

inequitable conduct.  (*See* Answer and Counterclaim of Defendant Volkswagen Group of America,

Inc. to Third Amended Complaint, Doc. No. 337, at ¶¶ 80-99).  On January 26, 2010, Affinity's

counsel sent VWGoA's counsel a letter demanding the withdrawal of the inequitable conduct

allegation.  (*See* 1/26/10 letter from M. Gaudet to M. Lennon, attached as Exhibit B).  Following an

exchange of letters (*see* 2/3/10 letter from M. Lennon to M. Gaudet and 2/12/10 letter from M.

Gaudet to M. Lennon, attached as Exhibits C and D), VWGoA refused to withdraw the claim,

ultimately stating that it would "fully pursue and prove this defense during discovery and at trial."

(2/12/10 e-mail from M. Lennon to M. Gaudet, attached as Exhibit E).  Affinity therefore waited for

discovery to be completed before seeking this relief from the Court.

Defendants (including VWGoA) proceeded to take the depositions of Mark Rozman (the patent attorney prosecuting the '228 Patent) and of both of the named inventors of the '228 Patent: Russell White and Kevin Imes. (*See* Exhibits F, G and H, respectively).

Following those depositions, VWGoA repeated its inequitable conduct defense in its First Amended Answer filed on April 9, 2010.  (*See* Doc. 375, First Amended Answer and Counterclaim of Defendant Volkswagen Group of America, Inc. to Third Amended Complaint, at ¶¶ 83-122).  At that time, Defendants Hyundai/Kia also filed an Amended Answer to Affinity's Third Amended Complaint on April 9, 2010, pleading a similar inequitable conduct claim as that of VWGoA.  (Doc. No. 374, at ¶¶ 53-70).  None of the other three defendants have ever asserted inequitable conduct against Affinity.

On May 19, 2010 – after the final depositions of Messrs. Rozman, White and Imes – counsel for Affinity sent a letter to counsel for VWGoA and counsel for Hyundai/Kia attaching a 10-page interrogatory response outlining the deficiencies in the inequitable conduct assertion and demanding that VWGoA and Hyundai/Kia withdraw the allegations of inequitable conduct on or before June 4, 2010.  (*See* Exhibit I).  In sum, Affinity claimed that "there could NEVER be inequitable conduct on the facts alleged when the patent examiner makes clear that he does not want to see and would not review orders granting reexamination or litigation positions of the parties." (*Id.*)  In response, Hyundai/Kia withdrew the claim of inequitable conduct.  (*See* Exhibit J).

To date, Affinity has received no response to its May 19 letter from VWGoA, nor has VWGoA otherwise dismissed its inequitable conduct allegations.  Although VWGoA has ignored Affinity's demands to dismiss the claim, VWGoA has not submitted any expert report on the topic of inequitable conduct.  Affinity files the instant motion to weed out this unsupportable claim from the litigation.

## Local Rule CV-56(a) Statement of Material Facts

In support of its motion for summary judgment and in accordance with Fed.R.Civ.P. 56 and Local Rule CV-56(a), Affinity sets forth the following statement of undisputed facts:

Russell White ("Mr. White") is a named inventor on the '228 Patent and is also a patent attorney who filed and began the prosecution of the '228 Patent before the United States Patent and Trademark Office ("USPTO").  (*See* Ex. G., White Dep., 10:25-11:13).  During the course of the prosecution of the '228 Patent, Affinity hired Mark Rozman ("Mr. Rozman"), a patent attorney at Trop, Pruner & Hu, to take over prosecution of the '228 Patent from Mr. White.  (Ex. G, White Dep. 11:14-21; Ex. F, Rozman Dep. 6:14-15; 8:10-9:2; 23:18-24).  As persons registered to practice before the USPTO, both Messrs. White and Rozman are and were aware of their duties of candor and of disclosure under Rule 56.  (Ex. G, White Dep. 149:14-150:2; Ex. F, Rozman Dep.13:25-16:3).  Kevin Imes is a named inventor on the '228 Patent and is also a patent agent, but he had no involvement in the prosecution of the '228 Patent. (*See* Ex. H, Imes Dep., 11:11-24).

On November 7, 2008, John King (on behalf of a defendant in a related case) requested an *ex parte* reexamination of the '833 Patent.  (*See* 2/20/09 Order at 2, Doc. No. 154).  The Patent Office granted that request and initiated the reexamination on December 19, 2008.  (*Id.* at 3).  At that time, the '228 Patent was being prosecuted.  Affinity submitted the *ex parte* reexamination request, and then submitted the order granting that reexamination request to the Patent Office in connection with the '228 Patent.  (*See* Exhibit K at pp. 1 and 4).  In response, the '228 examiner lined through the order granting that reexamination request, indicating it was not the type of document he would consider in the prosecution of the application that led to the '228 Patent:

| | 1 | U.S. Patent and Trademark Office, Order Granting/Denying Request For Ex Parte Reexamination dated December 19, 2008 for U.S. Patent No. 7,324,833 (request granted), Pages 1-13. | ☐ |
|---|---|---|---|

(*See* Ex. K at p. 6).  The bottom of the page confirmed that the line through a reference indicated it

was not something the examiner would consider:

> *EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

(*Id.*)

On March 20, 2009, all Defendants except VWGoA served a joint set of invalidity

contentions in this action and in the related -171 action (and the then-pending -163 action),

including a detailed analysis of why they believe the '833 Patent is invalid for failure to comply

with the written description requirement.  (*See* Ex. L, Excerpts from Defendants' Joint invalidity

Contentions and Production of Documents Pursuant to Patent Rules 3-3 and 3-4(b) at 12-18).  At

that time, the '228 Patent was being prosecuted.  Affinity submitted the defendants' joint

contentions to the Patent Office in connection with the '228 Patent.  (*See* Ex. K, at p. 8)  The

examiner lined through the contentions, indicating it was not the type of document he would

consider in the prosecution of the application that led to the '228 Patent.  (*Id.* at p. 11).

On August 21, 2009, VWGoA requested an *inter partes* reexamination of the '833 Patent.

At that time, the '228 Patent was being prosecuted.  Affinity submitted the reexamination request to

the Patent office in connection with the '228 Patent.  (*See* Ex. K, at p. 13)  The examiner lined

through it, indicating it was not the type of document he would consider in the prosecution of the

application that led to the '228 Patent:

| | | | | |
|---|---|---|---|---|
| | | *Request for Inter Partes Reexamination Of U.S. Patent No. 7,324,833 Pursuant To 37 CFR 1.915," Requestor: | | |
| | 1 | Volkswagen Group of America, Inc., Filed on August 21, 2009, Pages 1-61 with Certificate of Mailing, and Claim Charts A - HH. | | ☐ |

(*See* Ex. K at p. 12).  Again, the bottom of the page confirmed that the line through a reference

indicated it was not something the examiner would consider:

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /J.G./

(*Id.*)

On September 22, 2009, Affinity had an in-person interview with the examiner of the application that led to the '228 Patent.  During that interview, the examiner explained that he did not want Affinity to submit reexamination requests or orders granting reexaminations; he only wanted to see actual Office Actions from reexaminations.  Mr. White testified about this as follows:

> Q.  Are you aware that this order was never provided to the -- to Examiner Gelin in connection with the prosecution of the '444 application?
>
> MR. SANKEY:  Objection, form.
>
> A.  I assume that's true because that's the basis of your inequitable conduct claim.
>
> Q.  Okay.  And no reason to dispute that?
>
> A.  There might be reasons to dispute it but -- I don't know that this was submitted –
>
> Q.  Okay.
>
> A.  -- to Examiner Gelin.
>
> Q.  Okay?
>
> A.  I would be shocked she actually, it was submitted to Examiner Gelin.
>
> Q.  Okay and why is that?
>
> A.  Because we did submit the ex parte reexamine grant to Examiner Gelin and he drew a line through it and told us not to send him reexam grants.
>
> Q.  He told you not to send anymore?
>
> A.  Yes, which I think is documented in some office action interview summary at some point in the file.  I think if you go back and look at the IDS you'll see the line drawn through the ex parte through the reexam grant.
>
> Q.  Was there just a line?
>
> A.  No, he told us -- we met with him and he -- when we discussed what he wanted from us, and he wanted rulings of the court, you know, substantial -- he didn't want discovery, he didn't want -- he may have said that he wanted reexam requests though except I don't remember that specifically.  I know he didn't want reexam grants and I think examiner Erica Gary told us the same thing in an interview with her.
>
> Q.  So he told you specifically he did not want to see any reexam grants?

A.  Yeah.

Q.  And you were -- and you have a clear recollection of that?

A.  Yeah.

Q.  And this was at an interview?

A.  Yeah.

*****

Q.  August or September of '09?  Okay.  Did he say why he didn't want reexam orders?

A.  We asked him why he didn't consider the ex parte reexam order he said that's not what he wants.  That's not important to him.  He wants to see the art.  He doesn't want to see lawyer argument about the art.

Q.  So is it your testimony that Examiner Gelin said to you in that interview, I do not want you to send me any reexam orders?

A.  He -- it's my testimony that he said, I don't want reexam orders -- grants of reexam is what he said -- I don't think he said reexam orders, I don't want grants of reexams, I don't want all your back and forth in -- in litigation.  I want art and substantive rulings.  If a claim is found invalid by a court, I want to know that.

Q.  Okay.  Is there anything in -- that you know of that corroborates your testimony that he said specifically he did not want reexam grants or grants of reexam?

A.  I think there's probably a reference to it in an interview summary and I think there is probably an IDS that we submitted in the record that you can find where he drew a line through the ex parte reexam being granted saying that he was not going to consider it.  That's what that means.

*****

Q.  So you think the interview summary does say he said don't send me any grants of reexam?

A.  It might say that.  It might.  I think there was -- I remember it being said, and I -- what I don't remember for sure if it was said in an interview summary that was sent to examiner Gary or if it was  sent to Examiner Gelin or both.

Q.  Okay.

A.  Examiner Gary is sort of the other primary that is handling various applications.

Q.  Okay.  So, to your knowledge, the -- this order dated November 9th granting reexam was not submitted to Examiner Gelin for the sole reason that he  said in an interview, I don't want to see -

MR. SANKEY:  Objection, form.

A.  No, I'm sorry I'm not sure we had it –

Q.  Okay.

A.  -- in time to send it in.  That's what I'm saying.  I thought we'd gone on this tangent that if I did have it, would we send it in and I was like no  because the examiner doesn't want it and told us he didn't want it.

Q.  Okay.

A.  I'm not convinced it was in our possession in time to send it in.

Q.  Okay.  So in your view, reexam orders, such as the one we have in this case that we were just looking at, are not relevant to patentability and don't need to be shared with examiners?

MR. SANKEY:  Objection, form.

A.  I do not believe they're relevant to patentability, and they -- probably don't need to be shared with examiners.  That's especially true if the examiner has already had the request, because the grant  is a subset of the request, and it's double especially  true, if that's a word or a phrase -- if the examiner  has already lined through the last time you tried to send one in and said, don't do it again.  I don't know   what else to tell you.

Q.  Did the examiner write, don't do it again?

MR. SANKEY:  Objection, form.

A.  No.  The examiner lined through, said, I'm not going to consider these.

(*See* Ex. G, White Trans., 155: 21-157:11, 158:4-10, 162:6-163:24).

In an interview summary in connection with U.S. Patent Application No. 12/015,320 (which was allowed a few weeks ago), this same discussion with Examiner Gelin is recounted:

> Regarding future disclosure materials, the Examiner indicated that she did not want to receive the grants of the reexamination requests.  Applicants appreciate the Examiner's concern regarding the volume of disclosure materials, and Applicants will provide, going forward, additional prior art documents discovered, along with substantive non-discovery rulings of courts in litigations involving related patents, Office Actions, and Responses from reexaminations involving related patents and related applications.  But, at the Examiner's request, papers filed by the parties with the courts in such litigations and papers granting reexamination will not be provided to the Examiner.  Applicants discussed that during the prosecution of U.S. Patent No. 7,634,228, Examiner Gelin indicated that he did not want to receive papers from re-examinations and pending litigations other than substantive rulings of court and Office Actions/Responses.  If Applicants have misunderstood the Examiner's wishes regarding disclosure materials, Applicants respectfully request the Examiner to address the same in the next paper.

(*See* Ex. M, U.S. Patent Application No. 12/015,320, 3/12/10 Reply to Office Action at 11).

On the same day as the in-person interview in the '228 prosecution (about which Mr. White testified that the examiner said only to submit Court rulings, as described above), there was also an interview with different examiners in the '833 *ex parte* reexamination, and they made the same point:

> Also discussed in light of the comment in the Office Action regarding submission of court documents and USPTO proceedings, it was agreed that any prior art documents discovered will be provided to the Examiner.  Furthermore, it was agreed that substantive non-discovery rulings of courts in litigations involving the '833 Patent will be provided to the Examiner, but papers filed by the parties with the courts in such litigations will not be provided to the Examiner.

(*See* Ex. N, Reexamination Control No. 90/010,333, 10/2/09 Reply to Office Action at 7).

Mr. White's testimony confirms these facts as well:

Q.  So why did you submit one of them and not the  other?

MR. SANKEY:  Objection, form.

A.  At the time of the summary judgment briefing,  were we had talked with the examiner, and they wanted  rulings of the court, and so we waited until we had a ruling and then we submitted the rule.

(*See* Ex. G, White Trans., 201:12-19).

On September 23, 2009 – the day after the afore-mentioned in-person interview in the '228 prosecution – JVC/Kenwood filed a motion for summary judgment in the -171 case alleging that the claims of the '833 Patent are invalid for failure to satisfy the written description requirement.  (*See* Doc. No. 148 in -171 action).  That summary judgment motion set forth the written description position previously set forth in the Defendants' invalidity contentions, which were submitted in the '228 prosecution and which the examiner had lined through.  (*Id.*)  After the '228 Patent issued, JVC/Kenwood requested and received an order denying the motion without prejudice with leave to re-file.  (*See* -171 action, Doc. No. 190).

On October 1, 2009, the Patent Office issued a Notice of Allowance on the application resulting in the '228 Patent, and on November 5, 2009 the Patent Office issued a Supplemental Notice of Allowance on the application resulting in the '228 Patent.  On October 2, 2009, Affinity paid the required fees for the patent to issue.  (*See* Ex. K, pp. 15-25).

On November 9, 2010, the Patent Office issued the November 9 Grant in the VWGoA *inter partes* reexamination of the '833 Patent, as described above. (*See* Ex. A)

On December 15, 2009, the '228 Patent issued.

Against this backdrop, VWGoA asserts that Affinity intended to deceive the examiner – i.e., to commit fraud – because Affinity did not submit two documents after the September 22 interview that fell into the categories they were told by the examiner not to submit.  On this record, Affinity respectfully submits that such an allegation of inequitable conduct cannot be made in good faith.

## **Argument**

### A.     **Relevant Legal Standard**

Patent applicants "have a duty to prosecute patent applications in the [PTO] with candor,

good faith, and honesty." *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp*., 488 F.3d 982, 999

(Fed. Cir. 2007); *see also* 37 C.F.R. § 1.56(a) (2009).  A party asserting inequitable conduct must

prove by clear and convincing evidence that a patent applicant breached that duty by (1) "fail[ing]

to disclose material information or submit[ting] materially false information to the PTO" with (2)

"intent to mislead or deceive the examiner." *McKesson Info. Solutions, Inc. v. Bridge Med., Inc*.,

487 F.3d 897, 913 (Fed. Cir. 2007).  "The required showings of materiality and intent are separate,

and a showing of materiality alone does not give rise to a presumption of intent to deceive."

*Praxair, Inc. v. ATMI, Inc*., 543 F.3d 1306, 1313 (Fed. Cir. 2008).

Under the materiality prong, information is material when a reasonable examiner would

"likely consider [the information] important in deciding whether to allow an application to issue as

a patent."  *McKesson*, 487 F.3d at 913; *see also Symantec Corp. v. Computer Assocs. Int'l, Inc*., 522

F.3d 1279, 1297 (Fed. Cir. 2008).

Under the intent prong, a party can prove intent to deceive the PTO based on direct evidence

or on circumstantial evidence "with the collection of inferences permitting a confident judgment

that deceit has occurred."  *McKesson*, 487 F.3d at 913.  The "intent" element of inequitable conduct

is not simply intent to take the action or omission complained of, but intent to deceive or mislead

the patent examiner into granting the patent. *See Kingsdown Medical Consultants, Ltd. v. Hollister*

*Inc*., 863 F.2d 867, 876-77 (Fed. Cir. 1988) (en banc); *Dayco Prods., Inc. v. Total Containment,*

*Inc*., 329 F.3d 1358, 1367 (Fed. Cir. 2003) ("[I]nequitable conduct requires not intent to withhold,

but rather intent to deceive.").  That is, "one must have intended to act inequitably." *Kingsdown*, 863

F.2d at 872 (quoting *FMC Corp. v. Manitowoc Co*., 835 F.2d 1411, 1415 (Fed. Cir. 1987)).

After the accused infringer has made this threshold showing of materiality and intent to deceive, "the district court must balance the substance of those now-proven facts and all the equities of the case to determine whether the severe penalty of unenforceability should be imposed." *Id*. at 1367. If the court finds on the balance that the applicants committed inequitable conduct, the patent is unenforceable. *Monsanto Co v. Bayer Bioscience, N.V.*, 514 F.3d 1229, 1242 (Fed. Cir. 2008). This balancing by the Court presupposes that a threshold level of both of these elements has already been established by clear and convincing evidence. *See Manville Sales Corp. v. Paramount Systems, Inc*., 917 F.2d 544, 551 (Fed. Cir. 1990) ("Inequitable conduct requires proof by clear and convincing evidence. A threshold showing of both materiality and intent to mislead or deceive must be first established, and then those fact-findings are balanced to make the determination whether 'the scales tilt to a conclusion that inequitable conduct occurred.'").

"Although the premises of inequitable conduct require findings based on all the evidence, a procedure that may preclude summary determination, a motion for summary judgment may be granted when, drawing all reasonable factual inferences in favor of the non-movant, the evidence is such that the non-movant cannot prevail." *ATD Corp. v. Lydall, Inc*., 159 F.3d 534, 547 (Fed. Cir. 1998). VWGoA bears the significant burden of proving inequitable conduct. *See Star Scientific, Inc.*, 537 F.3d at 1365 ("The need to strictly enforce the burden of proof and elevated standard of proof in the inequitable conduct context is paramount because the penalty for inequitable conduct is so severe, the loss of the entire patent even where every claim clearly meets every requirement of patentability.").

As the moving party without the burden of proof on inequitable conduct at trial, Affinity may discharge its initial burden on summary judgment by either producing evidence negating an essential element" of VWGoA's claim, or by showing that VWGoA does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *See Adickes v. S.H. Kress*

*& Co.*, 398 U.S. 144, 160 (1970)  If Affinity discharges its burden by either method, the burden then shifts to VWGoA to produce evidence creating a triable issue on a clear and convincing evidence standard sufficient to defeat Affinity's motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  VWGoA cannot meet that burden on this record.

**B.      VWGoA Cannot Meet Its Burden.**

The prosecution history of the '228 Patent demonstrates that the applicants bent over backwards to put information in front of the examiner.  ('228 Patent at pp. 1-7).  Indeed, immediately before the '228 Patent issued (*i.e.,* in the time period during which VWGoA now alleges that Affinity should have been reopening examination and filing still more Information Disclosure Statements), VWGoA itself *criticized* Affinity for having submitted too much material and further criticized the examiner because VWGoA believed the examiner did not carefully review all of the materials submitted.  (VWGoA 12/9/09 Opposition to Affinity's Motion for Leave at 4-5, Doc. No. 318).

VWGoA has now cobbled to together an inequitable conduct argument based on the withholding of the types of documents that the examiner told Affinity not to disclose.  VWGoA could find neither a co-defendant to join this theory nor an expert to sponsor it.  As has often occurred in this case, VWGoA has chosen to stand alone, and does so while making the most serious type of allegation that can be made in a patent case.  As set forth below, the VWGoA's theory is frivolous, and it is ripe for summary adjudication and a declaration of exceptional case on this issue.

**1.      November 9 Grant**

There are at least two fatal flaws with VWGoA's Attempt to show intent to deceive with respect to the November 9 Grant.  Each is discussed below.

i.    *Knowledge*

A prerequisite to any allegation of intent to deceive is proof that the individuals involved

had knowledge of the purportedly withheld document, *i.e.*, knowledge of the thing that is

purportedly the subject of the alleged fraud.  In situations of nondisclosure of information rather

than affirmative misrepresentation, "clear and convincing evidence must show that the applicant

made a deliberate decision to withhold a known material reference." *Molins PLC v. Textron, Inc.*,

48 F.3d 1172, 1181 (Fed. Cir. 1995).  "Evidence of mistake or negligence, even gross negligence, is

not sufficient to support inequitable conduct in a patent prosecution." *Astrazeneca Pharms. LP v.*

*Teva Pharms. U.S., Inc.*, 583 F.3d 766, 773 (Fed. Cir. 2009).  Thus "[i]ntent to deceive cannot be

inferred solely from the fact that information was not disclosed; there must be a factual basis for a

finding of deceptive intent." *Herbert v. Lisle Corp.*, 99 F.3d 1109, 1116 (Fed. Cir. 1996); *see also,*

*Larson Mfg. Co. of S.D. v. Aluminart Prods. Ltd.*, 559 F.3d 1317, 1340 (Fed. Cir. 2009)

("[N]ondisclosure, by itself, cannot satisfy the deceptive intent element."); *Star Scientific*, 537 F.3d

at 1366 ("Thus, the fact that information later found material was not disclosed cannot, by itself,

satisfy the deceptive intent element of inequitable conduct.").  Here, there is simply no evidence of

knowledge, let alone the requisite deceptive intent to support a triable issue on inequitable conduct.

There is no evidence that Messrs. Rozman, White, or Imes had knowledge of the November

9 Grant which VWGoA alleges that Affinity failed to disclose to the Patent Office.  Mr. Rozman

testified that he has no recollection of seeing the November 9 Grant before the '228 Patent issued a

month later on December 15, 2009.  (Ex. F, Rozman Trans., 221:1-235:20).  According to Mr.

Rozman, his law firm Trop. Pruner & Hu has a policy and process (including date-stamping to

indicate receipt and docket-stamping to indicate further action due date) with respect to incoming

communications from the USPTO.  (*Id*. at 207:1-209:18; 221:1-235:20).  Mail from the Patent

Office goes to his firm's Houston office, where it is collected and then every couple of weeks it is sent in bulk to his Austin office from the firm's Houston office.  (*Id.*).  Then, Mr. Rozman's assistant flags and prioritizes Patent Office correspondence based in part on whether a response is required, and no response is required to an order granting a reexamination (responses are only made to the ensuing Office Action that follows an order granting a reexamination).  (*Id.*).  Given these facts, Mr. Rozman testified that it is not surprising he would not have seen the November 9 Grant before the '228 Patent issued.  (*Id.*).  Similarly, Mr. White also testified that he has no recollection of seeing the November 9 Grant before the '228 Patent.  (Ex. G, White Trans., 149:1-12; 155:21-156:13; 162:16-163:15).  There is likewise no evidence or suggestion that Mr. Imes had any knowledge of the November 9 Grant before the '228 Patent issued.

        ii.     *Examiner's Instructions*

Even if VWGoA had evidence from which an inference might be made regarding knowledge of the November 9 Grant prior to the December 15 issuance of the '228 Patent, there can be no inference of deceptive intent because the examiner had made it clear that he did not want to see orders granting reexaminations.  In evaluating intent, courts must consider evidence that the patent applicants withheld information from the Patent Office in good faith.  *See Purdue Pharma L.P. v. Endo Pharms., Inc.*, 438 F.3d 1123, 1134 (Fed. Cir. 2006).  A district court may not draw an inference of bad faith when a party has plausible reasons for withholding information:  mere intent to withhold does not support an inference of intent to deceive.  *McKesson*, 487 F.3d at 913.  In essence, a court should only infer intent to deceive when the evidence is clear and convincing. "[T]he inference [of intent to deceive] must not only be based on sufficient evidence and be reasonable in light of that evidence, but it must also be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard." *Star Scientific*, 537 F.3d at 1366; *see also Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 939 (Fed. Cir. 1990)

("Given the ease with which a relatively routine act of patent prosecution can be portrayed as intended to mislead or deceive, clear and convincing evidence of conduct sufficient to support an inference of culpable intent is required.").

In this case, the patent examiner was unequivocal that he did not want to review orders granting reexaminations, which would include the November 9 Grant.  As a matter of law, following the directions of the examiner cannot be inequitable conduct.  The examiner made clear that the applicants should not submit orders granting reexaminations, as follows:

- The order granting the earlier *ex parte* reexamination of the '833 Patent was submitted to the Patent Office during the prosecution of the '228 Patent, and the examiner lined through it, indicating it was not something that would be considered by the examiner.  (Ex. K, at p. 6)

- Similarly, the VWGoA *inter partes* reexamination (which was the subject of the November 9 Grant) was submitted to the Patent Office during the prosecution of the '228 Patent, and the examiner also lined through it, indicating it was not something that would be considered by the examiner.  (Ex. K at p. 12)

- Then, in an in-person interview, the '228 examiner specifically told Messrs. White and Rozman <u>not</u> to submit reexamination grants, consistent with the examiner's lining through of the previous '833 reexamination grant that had been submitted.  (Ex. G White Trans., 15:21-157:11; 158:4-10; 162:6 – 163:24)[2]

The examiner's position is corroborated by three documents and by Mr. White's testimony, *supra*.  First, the line through the prior '833 reexamination grant and the explanation of the meaning of the line is in the prosecution history of the '228 Patent; it is unmistakable.  Second, an interview summary in connection with U.S. Patent Application No. 12/015,320 confirms that Patent Examiner

---

[2]    The November 9 Grant is plainly not an Office Action, and any information in the November 9 Grant is purely cumulative.  It is always an examiner's job to review patent applications and determine whether claims satisfy the written description requirement, and the '228 examiner is properly presumed to have already carried out those duties.  *See, e.g., Amgen Inc. v. Hoechst Marion Roussel*, 314 F.3d 1313, 1327 (Fed. Cir. 2003) ("We must presume the examiner did his job, and if he truly thought that the specification taught or enabled only the use of exogenous DNA, the asserted claims would not have issued.").  Here, the examiner considered the written description support of the '228 claims thoroughly.  Likewise, all of the art at issue was also in the VWGoA reexamination request (among other disclosures), which was submitted to the examiner.

Gelin "indicated that he did not want to receive papers from re-examinations and pending litigations other than substantive rulings of court and Office Actions/Responses." (*See* Ex. M, U.S. Patent Application No. 12/015,320, 3/12/10 Reply to Office Action at 11). Third, the VWGoA *inter partes* request that led to the November 9 Grant was submitted, and the '228 examiner lined through it. Finally, Mr. White's testimony fully corroborates this chain of events. (Ex. G, White Trans., 155: 21-157:11, 158:4-10, 162:6-163:24).

The fact that a reasonable practitioner would not have submitted this document is further confirmed by VWGoA's own statements to this Court. On December 9, 2009 – *i.e.*, during the window of time when VWGoA now asserts Affinity should have reopened prosecution to submit the November 9 Grant (*i.e.*, between 11/9/09 and 12/15/09) – VWGoA itself submitted a brief to the Court in opposition to Affinity's motion to amend the Complaint to assert infringement of the soon-to-issue '228 Patent. (VWGoA 12/9/09 Opposition to Affinity's Motion for Leave, Doc. No. 318). In that brief, VWGoA described the '228 prosecution history in chapter-and-verse in that brief and identified the list of problems VWGoA believed existed the '228 prosecution. VWGoA specifically cited various papers and orders that VWGoA believed the examiner had not considered, and then spelled out the "potential[] inequitable conduct" defense that VWGoA believed existed. (Doc. No. 318, VWGoA 12/9/09 Opposition to Affinity's Motion for Leave at 2-5, 7, 7 n.6). In that filing, VWGoA made <u>no</u> mention of the November 9 Grant or of any inequitable conduct theory based on it.

And yet, one month later, the November 9 Grant that VWGoA itself did not see fit to mention to this Court *before* the '228 Patent issued, has somehow transformed into the basis for an accusation *after* the patent issued that three members of the bar intended to defraud the Patent Office. Whatever is motivating VWGoA's current assertion of this theory, it is not an objective

review of the factual record and the law.  In sum, the VWGoA theory is unsupportable and should be dismissed on summary judgment.

### 2.        JVC/Kenwood Motion for Summary Judgment Regarding Written Description

As described above, the '228 examiner instructed the applicant not to submit material reflecting the parties' litigation positions (*e.g.*, motion papers); the examiner only wanted to see substantive rulings from the Court.  Accordingly, and as a matter of law, VWGoA cannot prove intent to deceive and materiality.

The examiner's instruction is corroborated by several documents.  First, the JVC/Kenwood summary judgment motion was cumulative of the same written description position set forth in the Defendants' invalidity contentions, which were submitted in the '228 prosecution and which the examiner had lined through, as explained above.  Indeed, JVC/Kenwood itself withdrew the motion, and to date has not re-filed it.

Second, on the same day as the in-person interview in the '228 prosecution (about which Mr. White testified that the examiner said only to submit Court rulings, as described above), there was also an interview with different examiners in the '833 *ex parte* reexamination, and they made the same point.  (*See* Ex. N, Reexamination Control No. 90/010,333, 10/2/09 Reply to Office Action at 7).  Again, Mr. White's testimony confirms these facts.  (*See* Ex. G, White Trans., 201:12-19).

Even if VWGoA could prove that both of these papers (the November 9 Grant and the JVC/Kenwood summary judgment motion) were material, which the evidence does not support, the materiality of a reference alone cannot suffice to prove deceptive intent. *See, e.g., Astrazeneca, supra*, 583 F.3d at 770 ("Intent to deceive cannot be inferred from a high degree of materiality alone, but must be separately proved to establish unenforceability due to inequitable conduct."); *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 560 F.3d 1366, 1380 (Fed. Cir. 2009) ("Lilly cannot prove

deceptive intent by clear and convincing evidence simply by relying on the materiality of the errors."), *vacated pending reh'g en banc*, 595 F.3d 1329, 332 Fed. Appx. 636 (Fed. Cir. 2009), *reinstated in relevant part*, 598 F.3d 1336, 1358 (Fed. Cir. 2010) (en banc); *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1356 (Fed. Cir. 2008) ("Materiality is not evidence of intent, which must be established as a separate factual element of a discretionary ruling of inequitable conduct."); *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 822 (Fed. Cir. 1992) ("[M]ateriality does not presume intent, which is a separate and essential component of inequitable conduct."); *Halliburton Co. v. Schlumberger Technology Corp.*, 925 F.2d 1435, 1443 (Fed. Cir. 1991) (intent to deceive cannot be based on the materiality of a reference that was not submitted, even if gross negligence were shown); *Allen Organ Co. v. Kimball Int'l, Inc.*, 839 F.2d 1556, 1567 (Fed. Cir. 1988) ("[M]ateriality does not presume intent, which is a separate and essential component of inequitable conduct.").

The circumstances of this case and the factual record lead to one inescapable conclusion: Affinity's actions were consistent with the instructions of the examiner, and that cannot be used to infer an intent to deceive.  On these facts, VWGoA cannot sustain its burden of proof at trial that there is clear and convincing evidence of inequitable conduct on the part of Affinity.

### C.     This Is An Appropriate Occasion For Designation As An "Exceptional Case."

In exceptional cases, the court may award reasonable attorneys' fees to the prevailing party. 35 U.S.C. § 285.  An award of attorneys' fees under § 285 requires a two step analysis: (1) the moving party must prove by clear and convincing evidence that the case is exceptional; and (2) the court must determine whether such an award is warranted. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (en banc).

The Federal Circuit has admonished the practice of routinely accusing adversaries of inequitable conduct:  "[U]njustified accusations of inequitable conduct are offensive and unprofessional." *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1182 (Fed. Cir. 1995).  VWGoA's

approach of making such allegations on a record like this is precisely what led the Federal Circuit to remark that the charge of inequitable conduct in every major patent case "has become an absolute plague." *Burlington Indus., Inc.* v. *Dayco Corp.,* 849 F.2d 1418, 1422 (Fed. Cir. 1988). Where, as here, VWGoA has made completely unfounded assertions of inequitable conduct, it is appropriate to declare this case exceptional.  *See Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1328 (Fed. Cir. 2000) (affirming award of attorneys fees for an inequitable conduct defense "so lacking in substance as to constitute a waste of the time and resources of all the participants."); *Takeda Chem. Indus. Ltd. v. Mylan Labs., Inc.*, 459 F. Supp.2d 227, 243 (S.D.N.Y. 2006) (awarding fees against defendant because*, inter alia*, defendants "arguments that plaintiff engaged in inequitable conduct were entirely frivolous), *aff'd*, 549 F.3d 1381 (Fed. Cir. 2008).

No other Defendant joins VWGoA's allegations at this point.  Affinity has given VWGoA every opportunity to withdraw the defense short of motion practice.  VWGoA having refused to do so, it should be forced to incur the fees and expenses associated with the discovery and litigation of this inequitable conduct claim.

**[SIGNATURE ON FOLLOWING PAGE]**

Respectfully submitted,

Dated:      June 28, 2010                    By:   /s/ Jordan T. Fowles
                                                       Thomas W. Sankey
TX Bar No. 17635670
twsankey@duanemorris.com
Jordan T. Fowles
TX Bar No. 24048471
jtfowles@duanemorris.com
Wesley W. Yuan
TX Bar No. 24042434
wwyuan@duanemorris.com
**Duane Morris LLP**
1330 Post Oak Blvd., Suite 800
Houston, TX  77056
Tel.: 713.402.3900
Fax: 713.402.3901

L. Norwood Jameson
(admitted *pro hac vice*)
wjameson@duanemorris.com
Matthew C. Gaudet
(admitted *pro hac vice*)
mcgaudet@duanemorris.com

**Duane Morris LLP**
1180 West Peachtree Street, Suite 700
Atlanta GA  30309-3448
Tel.:  404.253.6900
Fax:  404.253.6901

Brian McQuillen
(admitted *pro hac vice*)
bmcquillen@duanemorris.com

**Duane Morris LLP**
1540 Broadway
New York, NY 10036-4086
Tel.:  212.692.1000
Fax:  212.692.1020

ATTORNEYS FOR PLAINTIFF/
COUNTER-DEFENDANT
AFFINITY LABS OF TEXAS, LLC

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on June 28, 2010.  Any other counsel of record will be served by First Class U.S. mail on this same date.

/s/ Jordan T. Fowles
Jordan T. Fowles