# EXHIBIT A

## PROPOSED JURY INSTRUCTIONS

You have heard the evidence in this case.  I will now instruct you on the law that you must apply.  It is your duty to follow the law as I give it to you.  On the other hand, you, the jury, are the judges of the facts.  Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments.  Statements and arguments of the attorneys are not evidence and are not instructions on the law.  They are intended only to assist the jury in understanding the evidence and the parties' contentions.

It is my duty as Judge to explain what some of the words used in the patent claims mean.  Attached as Appendix A to this charge are the claim terms I have defined for you.  These are the same definitions used in your juror notebook.  You must accept as correct the definitions contained in Appendix A.

The claim language of the patents that I have not defined for you in Appendix A is to be given its ordinary and accustomed meaning as understood by one of ordinary skill in the art, in the context of the patent specifications and prosecution history.  A person of "ordinary skill in the art" covered by the Patents-in-Suit is an individual with the equivalent of a four-year degree from an accredited institution (usually denoted in this country as a B.S. or Bachelor's

degree) in Electrical Engineering (EE), Mechanical Engineering (ME), or Computer Science (CS, with at least two semesters of coursework in EE and/or ME), together with at least two years of experience working with, developing, or designing electronic devices with user interfaces.  Advanced education in EE, ME, or CS might substitute for some of the experience, while extensive experience in working with, developing, or designing electronic devices with user interfaces might substitute for some of the educational requirements.

When words are used in these instructions in a sense that varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning.  The other words in these instructions, and in the definitions I have provided to you, have the meaning commonly understood.

Answer each question on the verdict form from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly.  Your answers and your verdict must be unanimous.

### I.  What is and What is not Evidence

You will be instructed to answer some questions based upon a **"preponderance of the evidence."**  This means you must be persuaded by the evidence that the claim is more probably true than not true.  You will be instructed to answer other questions by **"clear and convincing evidence."**  This is a higher

burden than by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.  Clear and convincing evidence is evidence that shows something is highly probable.  In deciding whether any fact has been proved in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he remembers it, because people may forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

In making up your mind and reaching your verdict, do not make your decisions simply because there were more witnesses on one side than on the other.

Do not reach a conclusion on a particular point just because there were more witnesses testifying for one side on that point.  The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw, from the facts that have been established by the testimony and evidence in the case.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case.  One is direct evidence – such as testimony of an eyewitness.  The other is indirect or circumstantial evidence – the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from all of the evidence,[1] both direct and circumstantial.

---

[1] The *Anascape* instruction stated "find the facts from a <u>preponderance</u> of all the evidence . . . ."  (Emphasis added).  Affinity's revision eliminates the word "preponderance."  because it would lead to confusion in the context of Defendants using circumstantial evidence to prove invalidity.

4

During the trial, I sustained objections to certain questions. You must disregard those questions entirely. Do not speculate as to what the witness would have said if permitted to answer the question.

Also, do not assume from anything I may have done or said during the trial that I have any opinion concerning any of the issues in this case. Except for the instruction to you on the law, you should disregard anything I may have said during the trial in arriving at your own findings as to the facts.

If you have taken notes they are to be used only as aids to your memory, and if your memory should be different from your notes, you should rely on your memory and not on your notes. If you did not take notes, rely on your own independent memory of the testimony. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than the recollection of each juror concerning the testimony.

If scientific, technical, or other specialized knowledge may be helpful to the jury, a witness with special training or experience may testify and state an opinion concerning such matters. However, you are not required to accept that opinion. You should judge such testimony like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the soundness of the reasons given for the opinion, and all other evidence in the case.

In deciding whether to accept or rely upon the opinion of such a witness, you may consider any bias of the witness, including any bias you may infer from evidence that the witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly.

II. The Nature of the Action, the Parties, and the Contentions

The patents involved in this case may be referred to as the '833 Patent and the '228 Patent, sometimes also referred to collectively as the "Patents-in-Suit."

**Plaintiff's Proposed Instructions:**

As you know, the Plaintiff is Affinity Labs of Texas, LLC, which I will refer to as Affinity. There are three groups of Defendants. First, I will refer to Defendants BMW North America, LLC and BMW Manufacturing Co., LLC as "BMW." Second, I will refer to Defendants Hyundai Motor America, Inc., Hyundai Motor Manufacturing Alabama, LLC, and Kia Motors America, Inc. as "Hyundai/Kia." Third, I will refer to Defendant Volkswagen Group of America as "Volkswagen." I will refer to BMW, Hyundai/Kia and Volkswagen together as "Defendants."

Affinity contends that the Defendants each infringe claims 28 and 35 of the '833 Patent, and claims 3, 16, 22, and 28 of the '228 Patent by making, using, offering to sell, or selling within the United States or importing into the United States certain automobiles that contain certain stereo systems with iPod integration

6

features.  The specific automobile stereo systems Affinity says are infringing are called the "accused" automobile stereo systems.  Affinity states that it is entitled to damages for the alleged infringement, in the form of a reasonable royalty.

BMW, Hyundai/Kia, and Volkswagen each deny that they are infringing any of the claims of the Patents-in-Suit.  BMW, Hyundai/Kia, and Volkswagen also contend that all asserted claims of the patents are invalid.  Invalidity is a defense to infringement.[2]  BMW, Hyundai/Kia, and Volkswagen each deny that Affinity is entitled to any damages.

### BMW's Proposed Instructions:

The owner of the patents-in suit is the Plaintiff, Affinity.  Plaintiff contends that the BMW defendants, the VW defendants, and the Hyundai/Kia defendants make, use, offer to sell, or sell within the United States products that infringe claims 28 and 35 of the '833 patent and claims 3, 16, 22 and 28 of the '228 patent.  Affinity also asserts that this infringement is willful.

Defendants deny that they infringe the '833 and '228 patents.  Defendants also contend that the '833 and '228 patents are invalid.  Invalidity is a defense to infringement.  Therefore, even though the PTO has allowed the '833 and '228

---

[2] The *Anascape* instruction included the sentence "Therefore, even though a PTO Examiner has allowed the claims of the Patents-in-Suit, you, the jury, have the responsibility for deciding whether the claims of the patents are valid."  Affinity's revisions delete that phrase because it is covered in the invalidity instruction later and is not balanced by a statement relating to the burden borne by Defendants with respect to invalidity, consistent with the statutory presumption of validity.

*patents to issue, you, the jury, have the ultimate responsibility for deciding whether the claims of these patents are valid.*

**Hyundai's & Kia's Proposed Instructions:**

*The owner of the patents-in suit is the Plaintiff, Affinity.  Plaintiff contends that the BMW defendants, the VW defendants, and the Hyundai and Kia defendants make, use, offer to sell, or sell within the United States products that infringe claims 28 and 35 of the '833 patent and claims 3, 16, 22 and 28 of the '228 patent. Affinity also asserts that this infringement is willful.*

*Defendants deny that they infringe the '833 and '228 patents.  Defendants also contend that the '833 and '228 patents are invalid.  Invalidity is a defense to infringement.  Therefore, even though the PTO has allowed the '833 and '228 patents to issue, you, the jury, have the ultimate responsibility for deciding whether the claims of these patents are valid.  Defendants also deny that Affinity is entitled to any damages.*

III.Claims and Claim Interpretation

To decide the questions of infringement and invalidity, you must first understand what the claims of the patents cover, that is, what they prevent anyone else from doing.  This is called "claim interpretation."  You must use the same claim interpretation for both your decision on infringement and your decision on

8

invalidity.  I instructed you earlier on the definitions you must use in interpreting claims.

The patent claims are numbered sentences at the end of each patent.  Each claim describes a separate invention.  The claims are divided into parts called "limitations."  These limitations also may be referred to as "elements."  The claims are "word pictures" intended to define, in words, the boundaries of the inventions.  Only the claims of the patents can be infringed.  Neither the written description, sometimes called the specification, nor the drawings of a patent can be infringed.

In this case, there are two types of claims.  For example, claim 16 of the '228 patent is a "method" claim.  It refers to an activity, or a series of steps to perform a process.  Other claims, such as Claim 28 of the '833 patent is a "system" claim.  It refers to a device or a machine.

Patent claims may exist in two forms, referred to as independent claims and dependent claims.  An independent claim does not refer to any other claim of the patent.  Thus it is not necessary to look at any other claim to determine what an independent claim covers.  Claims 28 of the '833 Patent and claims 16 and 22 of the '228 Patent are independent claims.

A dependent claim refers to at least one other claim in the patent.  A dependent claim includes each of the limitations of the other claim to which it refers, as well as the additional limitations recited in the dependent claim itself.

9

Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers.  Claim 35 of the '833 Patent and claims 3 and 28 of the '228 Patent are dependent claims. Claim 3 of the '228 patent depends from Claim 1, so you must consider Claim 1 together with Claim 3 in the '228 patent.  Claim 35 of the '833 patent depends from Claim 34, which depends from Claim 28, so you must consider Claim 35 together with Claims 28 and 34 in the '833 patent.

IV.   Infringement

**<u>Plaintiff's Proposed Instruction:</u>**

<u>To prevail, Affinity must establish literal infringement of one or more claims of either of the Patents-in-Suit.  Affinity can do this in two ways:  either by proving that Defendants "directly infringe" the patents or by proving that Defendants "indirectly infringe" the patents.</u>

<u>DIRECT INFRINGEMENT</u>

<u>To prove "direct infringement" of a claim by a Defendant, Affinity must prove by a preponderance of the evidence that during the time that patent is in force, that defendant has made, used, offered to sell or sold within the United States or imported into the United States an automobile stereo system that incorporates all of the elements of that claim and has done so without the permission of the patent holder.  You must compare each accused automobile</u>

10

stereo system with each and every one of the elements of that claim of the patent to determine whether Affinity has proved, by a preponderance of the evidence, that each element of that claim is present.

Affinity has alleged that BMW, Hyundai/Kia and Volkswagen have directly infringed claims 28 and 35 of the '833 Patent beginning on the date that the '833 Patent issued, which was January 29, 2008.

Someone can directly infringe a patent without knowing that what they are doing is an infringement of the patent. They also may directly infringe even though they believe in good faith that what they are doing is not an infringement of any patent. On the other hand, someone does not infringe by inventing a new and different way of accomplishing the same result - that is, to create an automobile stereo systems that does not incorporate all of the limitations of any claim of the patent. However, the mere fact that elements of an automobile stereo system are covered by one or more of Defendants' patents does not protect the accused automobile stereo systems from infringing Affinity's patents.

### *BMW's Proposed Instruction:*

*Someone directly infringes a claim during the time the patent is in force, he or she makes, uses, sells, or offers to sell within the United States a method or system that meets all of the requirements of the claim and does so without the permission of the patent holder. To determine whether a particular method or system meets all of the requirements of a claim, you must understand the meaning of the words in the claim and the requirements that these words impose.*

11

*I have already explained to you the meaning of some of the words of the claims in this case. I have also explained to you that other words in the claims should be given plain English meaning. You must compare each accused product of each defendant separately with each and every one of the elements of that asserted claims of the '833 and '228 patents to determine whether Affinity Labs has proved, by a preponderance of the evidence, that each element of that claim is present.*

*Someone can infringe a patent without knowing that what they are doing is an infringement of the patent. They also may infringe even though they believe in good faith that what they are doing is not an infringement of any patent. On the other hand, someone does not infringe by inventing a new and different way of accomplishing the same result – that is, to create a product that does not incorporate all of the limitations of any claim of the patent.*

### Hyundai's & Kia's Proposed Instruction:

*Someone directly infringes a claim during the time the patent is in force, he or she makes, uses, sells, or offers to sell within the United States a method or system that meets all of the requirements of the claim and does so without the permission of the patent holder. The elements cannot be met by anyone other than that defendant.[3] Put another way, if the elements of the claim require a system or acts that are not provided/performed by that defendant, then the claim can only be infringed under "joint infringement," not direct infringement.[4]*

---

[3] *Golden Hour Data Sys., Inc. v. EmsCharts, Inc.*, 2010 U.S. App. LEXIS 16455, at *37-38 (Fed. Cir. Aug. 9, 2010); *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008); *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380 (Fed. Cir. 2007).

[4] *Golden Hour*, 2010 U.S. App. LEXIS 16455, at *37-38; *Muniauction*, 532 F.3d at 1329; *BMC Resources*, 498 F.3d at 1373.

*To determine whether a particular method or system meets all of the requirements of a claim, you must understand the meaning of the words in the claim and the requirements that these words impose.  I have already explained to you the meaning of some of the words of the claims in this case.  I have also explained to you that other words in the claims should be given plain English meaning.*

*You must compare each accused product of each defendant separately with each and every one of the elements of that asserted claims of the '833 and '228 patents to determine whether Affinity Labs has proved, by a preponderance of the evidence, that each element of that claim is present and met by that Defendant.*

*Someone can infringe a patent without knowing that what they are doing is an infringement of the patent.  They also may infringe even though they believe in good faith that what they are doing is not an infringement of any patent.  On the other hand, someone does not infringe by accomplishing the same result in a different way – that is, to create a product that does not incorporate all of the limitations of any claim of the patent.*

<u>JOINT DIRECT INFRINGEMENT</u>

**Hyundai's & Kia's Proposed Instruction:**

*To prove "joint direct infringement" of a claim by a Defendant, Affinity must prove by a preponderance of the evidence that during the time that patent is in force, that defendant, along with another party, over which the defendant exercised "control or direction," made, used, offered to sell or sold within the United States or imported into the United States an automobile stereo system that*

13

*incorporates all of the elements of that claim and has done so without the permission of the patent holder.*[5] *To satisfy the "control or direction" requirement, Affinity must prove that the defendant exercises substantial control over the other party.*[6] *For example, the relationship between an employer and employee is sufficient to satisfy the "control or direction requirement."*[7] *Mere "arms-length" agreements are insufficient to meet this standard.*[8]

## INDIRECT INFRINGEMENT

In addition to enforcing a patent against a direct infringer, a patent owner also has the right to enforce the patent against those who are known as "indirect infringers." There are two ways to indirectly infringe a patent: either by contributorily infringing the patent or by inducing another party to infringe the patent.

### Contributory Infringement (Plaintiff's Instruction)

Affinity has accused Defendants of contributorily infringing the Patents-in-Suit. Affinity may prove its claim of contributory infringement by demonstrating that Defendants' accused automobile stereo systems are especially designed for a

---

[5] *Golden Hour*, 2010 U.S. App. LEXIS 16455, at *37; *Muniauction*, 532 F.3d at 1329; *BMC Resources*, 498 F.3d at 1381.

[6] *Muniauction*, 532 F.3d at 1330.

[7] *Muniauction*, 532 F.3d at 1330.

[8] *Muniauction*, 532 F.3d at 1329; *BMC Resources*, 498 F.3d at 1381.

14

use which infringes the Patents-in-Suit, are not a staple article of commerce suitable for a non-infringing use and were sold with the knowledge that these automobile stereo systems were especially made or adapted to infringe.[9]  Restated, one contributorily infringes if he or she sells a product that is good for nothing more than the infringement of a patented product or process.[10]

One may not avoid contributory infringement by incorporating an infringing device or process in a larger product which may have additional, non-infringing features or functions.[11]

**Contributory Infringement (BMW's, Hyundai's & Kia's Instruction):**

Affinity Labs also alleges that each defendant is liable for contributory infringement by contributing to the direct infringement of the patents-in-suit by another company or person.   As with direct infringement, you must determine whether there has been contributory infringement on a claim-by-claim basis.

A defendant is liable for contributory infringement of a claim if:

(1)     It sells or offers to sell in the United States a component of a product or process during the time the patent is in force; and

(2)     the only substantial use for the component is in a method or apparatus that is covered by the claim, either directly or under the doctrine of equivalents, namely, the product has no substantial, non-infringing use other than the alleged infringing use; and

---

[9] 35 USC § 271(c); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et al.*, 491 F.3d 1342, 1356-58 (Fed. Cir. 2007); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1379 (Fed. Cir. 2001).

[10] *Metro-Goldwyn-Meyer Studios, Inc. v. Grokster Ltd.*, 545 U.S. 913, 932 (2005).

[11] *Ricoh Co. Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2008).

15

(3)     the defendant is aware of the patent and is on notice that the method or apparatus for which the component has no other substantial use may be covered by a claim of the patent or may satisfy a claim of the patent under the doctrine of equivalents; and

(4)     the component has been used by another in a manner that directly infringes the claim.

In order to prove contributory infringement, Affinity Labs must prove that each of the above requirements are met.  This proof of each requirement must be by a preponderance of the evidence, i.e., that it is more likely than not that each of the above requirements is met[12].

Inducement to Infringe (Plaintiff's Instruction)

Affinity has also accused Defendants of inducing infringement of the Patents-in-Suit.  Affinity may prove its claim of inducement to infringe by demonstrating that the expected use of each Defendants' accused automobile stereo systems infringes the Patents-in-Suit.[13]

A person induces patent infringement if he or she purposefully causes, urges or encourages another to infringe a patent.[14]  In order to prove inducement, the patent owner must prove that it is more probable than not that Defendants knew of the Patents-in-Suit and knew or should have known that the encouraged use of their automobile stereo systems constituted infringement of the Patents-in-Suit, and

---

[12] Source: AIPLA Model Jury Instructions (No. 3.3); *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317 (Fed. Cir. 2009); *Computer Acceleration Corp. v. Microsoft Corp.*, Civ. No. 9:06-cv-140 (E.D. Tex.) (Clark, J.).

[13] *Epcon Gas Sys. Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1033-34 (Fed. Cir. 2002).

[14] *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002).

16

that Defendants intended to cause the encouraged use.[15]  Affinity may prove both direct infringement and inducement to infringe by circumstantial evidence.[16]  No direct evidence is necessary or required and the proof may be inferred from all of the circumstances.[17]

When considering whether Defendants knew or should have known that the induced use of the accused automobile stereo systems would constitute infringement of the Patents-in-Suit, you may consider all of the circumstances. For example, Defendants' failure to obtain the advice of a competent lawyer is evidence of Defendants' intent to induce infringement.[18]  Other evidence of active steps taken to encourage direct infringement includes any active steps Defendants took to encourage direct infringement of the Patents-in-Suit, such as advertising an infringing use or instructing how to engage in an infringing use.[19]

---

[15] *Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683 (Fed. Cir. 2008); *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002); *Warner-Lambert Co. v. Teva Pharm, USA, Inc.*, 418 F.3d 1326, 1341 (Fed. Cir. 2005) ("A claim for patent infringement must be proven by a preponderance of the evidence . . ."); *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed. Cir. 2005).

[16] *Fuji Photo Film Co. Ltd. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377-78 (Fed. Cir. 2005); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986).

[17] *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668-69 (Fed. Cir. 1988); *Moleculon*, 793 F.2d at 1272.

[18] *Broadcom Corp.*, 543 F.3d 683.

[19] *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 162 L.Ed. 2d 781, 800, 125 S.Ct. 2764, 2779 (2005).

17

<u>Further circumstantial evidence of an intent to induce infringement is any</u>

<u>failure to remove or modify infringing features, especially where the Defendants</u>

<u>have control over the designs or manufacturing of the accused product.[20]</u>

***Induced Infringement (BMW, Hyundai's & Kia's Instruction):***

*Affinity Labs also alleges that each defendant is liable for infringement by actively inducing another to directly infringe the patents-in-suit. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.*

*To prove induced infringement, the plaintiff must prove that a defendant's actions actively encouraged another to infringe the patent and that the defendant knew or should have known that its acts would cause the other party to infringe the patent.[21] Therefore inducement requires a showing that the encouraged acts constitute direct infringement of that claim.[22]*

*Inducement requires that plaintiff show that a defendant acted with the intent to encourage another to commit the acts and that the defendant intend cause another to infringe the patent.[23] Therefore, plaintiff must show that the defendant had knowledge of the patent. Proof of intent to encourage infringement may be shown with circumstantial evidence.[24]*

*To establish induced infringement, it is not sufficient for Affinity Labs to prove that those who are allegedly induced to infringe directly infringe the claim. Nor is it sufficient for Affinity Labs to prove that a defendant was aware of the acts that allegedly constitute the direct*

---

[20] *Ricoh Co. Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1343 (Fed. Cir. 2008).

[21] *Lucent Tech. v. Gateway, Inc.,* 580 F.3d 1301, 1321-22 (Fed. Cir. 2009); *DSU Med. Corp. v. JMS Co.,* 421 F.3d 1293, 1306 (Fed. Cir. 2006)(en banc).

[22] *Id.*

[23] *Lucent,* 580 F.3d at 1322; *DSU*, 471 F.3d at 1306.

[24] *Fuji Photo Film Co. v. Jazz Photo Corp.,* 394 F.3d 1368, 1377 (Fed. Cir. 2005);*Water Techs. Corp. v. Calco Corp.,* 850 F.2d 660, 668 (Fed. Cir. 1988).

*infringement.  Rather, to find inducement of infringement, you must find that a defendant specifically intended to infringe the patent.  If you do not find the accused infringer specifically intended to infringe, then you must find that the accused infringer has not actively induced the alleged infringement.*[25]

## WILLFUL INFRINGEMENT (Plaintiff's Instruction)

Affinity claims that the Defendants infringed Affinity's patents willfully. Although you must determine whether the Defendants' infringement was willful, this determination will not affect the amount of damages, if any, that you assess. The purpose of your determination is to assist the Court in making decisions that it will have to make.

Affinity must prove willfulness by clear and convincing evidence.[26]  This is a higher degree of persuasion than is necessary to meet the preponderance of the evidence standard.  You should assess willfulness as to each Defendant separately. Affinity proves willful infringement if it shows that a Defendant acted with reckless disregard of Affinity's patents.[27]  To demonstrate reckless disregard, Affinity must show that a Defendant acted despite a high likelihood that its actions

---

[25] The last paragraph of the instruction is taken directly from the instruction in *DeepNines, Inc. v. McAfee, Inc.,* No. 9:06-CV-174 (E.D. Tex. July 14, 2008).

[26] *Tegal Corp. v. Tokyo Electron Amer., Inc.*, 257 F.3d 1331, 1351 (Fed. Cir. 2001).

[27] *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).

19

infringed a valid patent.[28]  The Defendant's state of mind is not relevant here.[29] You should focus on whether a reasonable person, in the position of the Defendant, after learning of the patents, could have reasonably believed that it did not infringe the patents or that the patents were invalid.[30]

If you find that a Defendant acted recklessly, then you also need to consider whether that Defendant knew, or it was so obvious that the Defendant should have known, that the Defendant was infringing Affinity's patents.[31]

In considering whether a Defendant willfully infringed the Patents-in-Suit, you should consider all of the circumstances surrounding the infringement, including whether the Defendant, once it had actual notice of Affinity's patents, formed a good-faith belief that the patents were invalid or that they were not infringed before that Defendant started or continued any possible infringing activity.[32]  In considering whether the Defendant acted in good faith, you should consider all the circumstances, including whether or not the Defendant obtained and followed the advice of a competent lawyer with regard to infringement.[33]  The

---

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *SRI Intl, Inc. v. Advanced Tech Labs., Inc.*, 127 F.3d 1462, 1464-65 (Fed. Cir. 1997).

[33] *Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 701 (Fed. Cir. 2008).

absence of a lawyer's opinion, by itself, is insufficient to support a finding of willfulness, and you may not assume that merely because a party did not obtain an opinion of counsel, the opinion would have been unfavorable.  However, you may consider whether the Defendants sought a legal opinion as one factor in assessing whether, under the totality of the circumstances, any infringement by the Defendant was willful.[34]

Another factor you may consider in evaluating the Defendants' conduct is whether one or more Defendants engaged in misconduct in this litigation, such as the withholding of documents or the failure to provide responses to written discovery.[35]

### V.   WILLFUL INFRINGEMENT (BMW'S, HYUNDAI'S & KIA'S INSTRUCTION)

*In this case, Affinity Labs argues that defendants willfully infringed the patents-in-suit.*

*To prove willful infringement, Affinity Labs must first persuade you separately for each defendant that a defendant infringed a valid and enforceable claim to the patents-in-suit.  The requirements for proving such infringement were discussed in my prior instructions.  The requirements for proving invalidity are discussed later in my instructions.*

---

[34] *Id.*

[35] *Dana Corp.,* 383 F.3d at 1348-49 (Fed. Cir. 2004); *Hoechst Celanese Corp. v. BP Chems. Ltd.,* 78 F.3d 1575, 1583 (Fed. Cir. 1996); *Empire Iron Works, Inc. v. Defender, Inc.,* 992 F. Supp. 928, 935-36 (E.D. Mich. 1997).

In addition, to prove willful infringement, Affinity Labs must prove by clear and convincing evidence that prior t the filing date of the complaint, the defendant acted with reckless disregard of the claims of the patents-in-suit.

To demonstrate such "reckless disregard," Affinity Labs must satisfy a two-part test. The first part of the test is objective. Affinity Labs must persuade you that a defendant acted despite an objectively high likelihood that its actions constituted infringement of a valid and enforceable patent. The state of mind of the defendant is not relevant to this inquiry.

You should focus on whether a reasonable person in the position of defendant, after learning of the patent, could have reasonably believed that it did not infringe or reasonably believed the patent was invalid or unenforceable. If a reasonable person in the position of a defendant could not have held such belief, then you need to consider the second part of the test.

The second part of the test does depend on the state of mind of the defendant. Affinity Labs must prove that the defendant actually knew, or it was so obvious that defendant should have known, that its actions constituted infringement of a valid and enforceable patent.

In deciding whether a defendant acted with reckless disregard for the patents-in-suit, you should consider all of the facts surrounding the alleged infringement including whether the defendant acted in a manner consistent with the standards of commerce for its industry.

The fact that you may have determined that a defendant was wrong and that the patent or patents are infringed does not mean that a defendant's infringement was willful. All that is required to avoid a finding of willful infringement is that the defendant had a good faith belief that it did not infringe, or that the patent was invalid, and that its belief was reasonable under all of the circumstances.

The issue of willful infringement is not relevant to you decision of whether there is infringement. A finding of willful infringement may, in certain circumstances, result in the court awarding the patent owner increased damages. If you decide that a defendant willfully infringed any of the patent claims, then it will be the Court's job to decide whether or not to award

*increased damages.  You should not consider willful infringement in making your damage*

*award, if any.*

VI.   Invalidity

**<u>Plaintiff's Instruction:</u>**

<u>Only a valid patent may be infringed.  A patent cannot take away from</u>

<u>people their right to use what was known or what would have been obvious when</u>

<u>the invention was made.  Therefore, you the jury have the responsibility for</u>

<u>deciding whether each claim in question is valid.</u>

<u>For a patent to be valid, the invention claimed in the patent must be new and</u>

<u>non-obvious in light of what came before.  That which came before is referred to</u>

<u>as the "prior art."  Defendants contend that the claims in the Patents-in-Suit are not</u>

<u>valid because they are described in one or more prior art references.  I will identify</u>

<u>the particular references that each Defendant is relying on.  The Defendants must</u>

<u>prove invalidity by clear and convincing evidence, which again is a higher standard</u>

<u>of proof than the preponderance of evidence standard.</u>[36][37]

<u>There are four ways in which the Defendants contend that the invention</u>

<u>described in a particular claim is invalid.  These ways, sometimes called</u>

<u>"anticipation," "obviousness," "written description," and "enablement" are</u>

---

[36] Affinity added the phrase "which again is a higher standard of proof than the preponderance of
evidence standard" to assist the jury in understanding the different standards.

[37] To the extent Plaintiff's Instruction is utilized, BMW, Hyundai, and Kia
specifically object to this addition by Plaintiff cited in the previous footnote.

23

described below.  You must consider each of these separately as to each claim, and decide whether Defendants have proven any of them by clear and convincing evidence.

*BMW's and Hyundai's & Kia's Instruction:*

*Only a valid patent may be infringed.  For a patent to be valid, the invention claimed in the patent must be new and non-obvious.  A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made.  Therefore, you, the jury, have the responsibility for deciding whether each claim in question is valid.*

*There are several ways in which defendants may try to prove that the invention described in a particular claim is invalid.  These ways are described below.  You must consider each of these separately as to each claim , and decide whether Affinity Labs has proven any of them by clear and convincing evidence.*

***Written Description***[38]

*To be valid, a patent must meet the "written description" requirement.  In order to meet the written description requirement, the description in the specification portion of the '833 and '228 patents must be detailed and specific enough to describe the invention that is claimed in the patents.*

*Defendants may establish that one or more claims of the '833 and '228 patents are invalid by showing, by clear and convincing evidence, that the written description of the invention in the patent specification is not adequate to describe the invention that is claimed.*

---

[38] BMW believes that the order of the Invalidity Instructions should be as follows: Written Description, Enablement, Date Of Invention, Prior Art, Anticipation, Obviousness.  Thus, BMW's proposed instructions on written description and enablement are set forth here.

*The written description in the specification must clearly allow persons of ordinary skill in the art to recognize that the inventor invented what is claimed.  In other words, "one skilled in the art, reading the original disclosure, must 'immediately discern the limitation at issue' in the claims."  This requirement "serves both to satisfy the inventor's obligation to disclose the technologic knowledge upon which the patent is based, and to demonstrate that the patentee was in possession of the invention that is claimed."  The patent's specification, standing alone, must "show that the inventor actually invented the invention claimed."*

*In the patent application process, the applicant may change the claims between the time the patent application is first filed and the time a patent is finally granted.  An applicant may amend the claims or add new claims.  These changes may narrow or broaden the scope of the claims.  The purpose of the written description requirement is to ensure that the '833 and '228 patents provides an adequate description of the invention and to ensure that the scope of the claims that are eventually issued remain within the scope of the written description of the invention that was provided with the original application that the named inventors filed in March 2000.*

*The written description requirement may be satisfied by the words and figures, diagrams in the patent.  A requirement in a claim need not be expressly disclosed in the specification; provided persons of ordinary skill in the field of technology of the invention would have understood that the missing requirement is inherent in the written description of the specification.  However, if it is necessary to combine portions of the specification must tell a skilled artisan which portions of the specification must be combined.*

25

*Enablement*

Another way defendant can meet its burden of proving that a patent claim is invalid is by proving by clear and convincing evidence that the patent does not contain a description of the claimed invention that is sufficiently full and clear to enable a person of ordinary skill in the field to make and use the invention. This is known as the "enablement" requirement.

The patent may be enabling even though it does not expressly state some information if a person of ordinary skill in the field could make and use the invention without having to do excessive experimentation. In determining whether excessive experimentation is required, you may consider the following factors:

(a)     The scope of the claimed invention;

(b)     the amount of guidance presented in the patent;

(c)     the amount of experimentation necessary;

(d)     the time and cost of any necessary experimentation;

(e)     how routine any necessary experimentation is in the field of the claimed invention;

(f)     whether the patent discloses specific working examples of the claimed invention;

(g)     the nature and predictability of the field; and

(h)     the level of ordinary skill n the field of the claimed invention.

The question of whether a patent is enabling is judged as of the date the original application for the patent was first filed.

## Date of Invention

Defendants are relying on several items of prior art. In order to rely on these items of prior art, Defendants must prove by clear and convincing evidence that

26

these items fall within one or more of the different categories of prior art

recognized by the patent laws.  These categories include:

A.    anything that was publicly known or used in the United States by
       someone other than the inventor before the date of the invention[39];

B.    anything that was sold or on sale in the United States more than one
       year before the effective filing date of the Patents-in-Suit;

C.    anything that was patented or described in a printed publication
       anywhere in the world before the date of the invention, or more than
       one year before the effective filing date of the Patents-in-Suit; and

D.    anything that was invented by another person in this country before
       the date of the invention, if the other person did not abandon, suppress
       or conceal his or her prior invention.

Two of the different categories of prior art refer to the "date of invention."

For purposes of this case the "date of the invention" for a particular claim is the

same as the "effective filing date," which is referred to in the other two categories

of prior art.

The effective filing date of a claim of the Patents-in-Suit is the date on

which the earliest patent application was filed (March 28, 2000).

I will now list the categories of prior art you may consider.  Later, I will list

the specific items of prior art upon which Defendants are relying in their effort to

establish that the claims of the Patents-in-Suit are invalid.

---

[39] The *Anascape* instruction used the phrase "before the inventor made the invention."
Affinity's revision avoids the word "made" because the jury could mistakenly understand
that to be a reference to "making" a physical embodiment of the invention.

DM1\2334452.1

Prior Art: Prior Use or Knowledge

### **Plaintiff's Proposed Instruction:**

Knowledge or use in the United States of a portable electronic device capable of being connected to another electronic device that is part of an audio system can be prior art to the patent claims.  The knowledge or use will be prior art if it meets the following requirements:

1. The knowledge or use must be by someone other than the inventor;

2. The knowledge or use must be before the effective filing date of the claim;

3. The knowledge or use must be in the United States.  Prior knowledge or use outside the United States cannot be relied upon to invalidate a patent claim; and

4. The knowledge or use must have been public.  Private or secret knowledge or use by someone other than the inventor is not prior art.

Prior Art: Prior Sale or Offered for Sale

The sale or offer for sale in the United States of a portable electronic device capable of being connected to another electronic device that is part of an audio system may be prior art to a patent claim if sold or offered for sale before the effective filing date of the claim.  The sale or offer for sale of the system or method must be public.

### *Hyundai and Kia's Proposed Instruction:*

*Knowledge or use in the United States of a portable electronic device capable of being connected to another electronic device can be prior art to the*

*patent claims.  The knowledge or use will be prior art if it meets the following*

*requirements:*

5.    *The knowledge or use must be by someone other than the inventor;*

6.    *The knowledge or use must be before the effective filing date of the claim;*

7.    *The knowledge or use must be in the United States.  Prior knowledge or use outside the United States cannot be relied upon to invalidate a patent claim; and*

8.    *The knowledge or use must have been public.  Private or secret knowledge or use by someone other than the inventor is not prior art.*

<u>Prior Art: Prior Sale or Offered for Sale</u>

*The sale or offer for sale in the United States of a portable electronic device*

*capable of being connected to another electronic device may be prior art to a*

*patent claim if sold or offered for sale before the effective filing date of the claim.*

*The sale or offer for sale of the system or method must be public.*

In order for there to be an offer for sale, two requirements must be met.

First, the invention must have been the subject of a commercial offer for sale.

Second, the invention must be "ready for patenting."

Even a single offer for sale to a single customer may be a commercial offer,

even if the customer does not accept the offer.

An invention is ready for patenting if the system offered for sale has been

developed to the point where there was reason to expect that it would work for its

29

intended purpose.  The invention may be ready for patenting even if it is not ready for commercial production, or has not been technically perfected.

## Prior Art: Prior Printed Publication

A printed publication in this or another country, or a foreign patent, may be prior art.  A printed publication must be reasonably accessible to those members of the public who would be interested in its contents.  It is not necessary that the printed publication be available to every member of the public.

So long as the printed publication was available to the public, the form in which the information was recorded is unimportant.  The information must, however, have been maintained in some permanent form, such as printed or typewritten pages, or photocopies.

## Prior Art: Prior Invention

An invention made in the United States by another person may be prior art as to a claim of the Patents-in-Suit if it was made before the date of invention of that claim of the Patents-in-Suit, and that person did not abandon, suppress, or conceal the invention.

In this regard, Defendants must show by clear and convincing evidence that before the date of invention of a claim of the Patents-in-Suit, another person or company made that invention in this country and that such person or company exercised reasonable diligence in later reducing that invention to practice.  In

addition, Defendants must show that the invention was sufficiently developed that one skilled in the art would have recognized that it would work for its intended purpose.

**Anticipation**

> **<u>Plaintiff's Proposed Instruction:</u>**

> <u>A patent claim is invalid if the claimed invention is not new.  For the claim to be invalid because it is not new, all of its requirements must have existed in a single item of prior art as described above.  If a patent claim is not new we say it is "anticipated" by a prior art reference.</u>

> *Hyundai and Kia's Proposed Instruction:*

> *A patent claim is invalid if the claimed invention is not new.  For the claim to be invalid because it is not new, all of its requirements must have existed, either literally or inherently, in a single item of prior art as described above.  If a patent claim is not new we say it is "anticipated" by a prior art reference.*

**[INSERT DEFENDANT NAME(S)]** is relying upon the following prior art references as anticipating prior art:

a.      **[EACH DEFENDANT TO INSERT LIST FOR EACH CLAIM]**

BMW is relying upon the Comdex '97 Network Vehicle as anticipating prior art.

31

Hyundai & Kia are relying on the Sony MZ-R50 player (PDX-4), U.S. Patent No. 6,192,340 to Abecassis, and the COMDEX '97 Network Vehicle as anticipating prior art.

### Plaintiff's Proposed Instruction:

For a prior art reference to anticipate a claim of the Patents-in-Suit, each element in the claim must actually be present in that item of prior art. Of course, you must first decide whether Defendants have shown by clear and convincing evidence that these references are "prior art" as defined above.

### *Hyundai and Kia's Proposed Instruction:*

*For a prior art reference to anticipate a claim of the Patents-in-Suit, each element in the claim must either actually be present in that item of prior art, or must be inherent to the reference. An element is inherent if a person of ordinary skill in the art would understand that the element is necessarily present in the reference.[40] Of course, you must first decide whether Defendants have shown by clear and convincing evidence that these references are "prior art" as defined above.*

## Obviousness

Defendants also contend that the claims of the Patents-in-Suit are invalid because the claimed subject matter was obvious to one of ordinary skill in the art at

---

[40] *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373 (Fed. Cir. 2003).

the time the invention was made.  To be patentable, an invention must not have been obvious to a person of ordinary skill in the pertinent art at the time the invention was made.

Obviousness may be shown by considering more than one item of prior art in combination with each other.  Defendants contend that the Patents-in-Suit would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made in light of prior art references identified below.

**[INSERT DEFENDANT NAME(S)]** is relying upon the following prior art references as anticipating prior art:

### [EACH DEFENDANT TO INSERT LIST FOR EACH CLAIM]

BMW is relying upon the following prior art references:

(1)     Comdex '97 Network Vehicle;

(2)     U.S. Patent No. 6,559,773 (Berry); and

(3)     U.S. Patent No. 6,192,340 (Abecassis).

Hyundai & Kia are relying on the following prior art references:

(1)     The COMDEX '97 Network Vehicle;

(2)     U.S. Patent No. 6,192,340 (Abecassis);

(3)     The Sony MZ-R50 Player (PDX-4); and

(4)     U.S. Patent No. 6,559,773 (Berry).

Again, you must first determine whether Defendants have shown by clear and convincing evidence that these references are "prior art" as defined above.

The next question is, would it have been obvious to those skilled in the art who knew of these items of prior art to make the invention described in a claim?  If the answer to that question is "yes", then that patent claim is invalid.  Defendants have the burden of proving by clear and convincing evidence that claims 28 and 35 of the '833 Patent and claims 3, 16, 22, and 28 of the '228 Patent are invalid for obviousness.

Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention.  The issue is not whether the claimed invention would have been obvious to you, to me as a Judge, or to a genius in the field of the invention.  Rather, the question is whether or not the invention would have been obvious to a person of ordinary skill in the field of the invention.

You must not use hindsight when comparing the prior art to the invention for obviousness.  In making a determination of obviousness or non-obviousness, you must consider only what was known before the invention was made.  You may not judge the invention in light of present day knowledge.

In determining whether or not these claims would have been obvious, you should make the following determinations from the perspective of a person of ordinary skill in the art, as I have previously defined it for you, in light of the scope and content of the prior art:

DM1\2334452.1

First, are there any **material differences** between the **scope and content** of the prior art and each asserted claim of the Patents-in-Suit?

Second, are there any **objective indications** of non-obviousness?

(a)      Scope and Content

Determining the scope and content of the prior art means that you should determine what is disclosed in the prior art relied upon by Defendants.  You must decide whether this prior art was reasonably relevant to the particular problem the inventor faced in making the invention covered by the patent claims.  Such relevant prior art includes prior art in the field of the invention, and also prior art from other fields that a person of ordinary skill would look to when attempting to solve the problem.

(b)      Material Difference

In determining whether there are any material differences between the invention covered by the patent claims and the prior art, you should not look at the individual differences in isolation.  You must consider the claimed invention as a whole and determine whether or not it would have been obvious in light of all the prior art.

If you conclude that the prior art discloses all the steps or elements of the claimed invention, but those steps or elements are in separate items, you may consider whether or not it would have been obvious to combine those items.  A

claim is not obvious merely because all of the steps or elements of that claim already existed.

In deciding whether to combine what is described in various items of prior art, you should consider whether or not there was some motivation or suggestion for a skilled person to make the combination covered by the patent claims. You should also consider whether or not someone reading the prior art would have been discouraged from following the path taken by the inventor.

**Plaintiff's Proposed Instructions:**

It is common sense that familiar items may have been obvious beyond their primary purposes, and a person of ordinary skill will[41] be able to fit the teachings of multiple patents together likes pieces of a puzzle. Multiple references in the prior art can be combined to show that a claim is obvious. Any need or problem known in the field and addressed by the patent can provide a reason for combining the elements in the manner claimed. To determine whether there was an apparent reason to combine the known elements in the way a patent claims, you can look to interrelated teachings of multiple patents, to the effects of demands known to the community or present in the marketplace, and to the background knowledge possessed by a person of ordinary skill in the art. In addition, attempts by a

---

[41] Affinity deleted the term "often" before "will" (which the Court used in *Anasacpe*) because the term "often" could be misunderstood and suggest a reduction in the burden of proof and weight of the presumption of validity.

defendant or others to patent the same technology claimed in the patent-in-suit and

statements made to the Patent Office regarding the patentability of the technology

claimed in the patents-in-suit are relevant evidence on the issue of obviousness.[42]

Neither the particular motivation of the person of ordinary skill in the art nor the

alleged purpose of the patentee controls.  One of ordinary skill in the art is not

confined only to prior art that attempts to solve the same problem as the patent

claim.

**_BMW's and Hyundai & Kia's Proposed Instructions:_**

---

[42] Affinity added this sentence based on the expected evidence in this case (it was not in the _Anascape_ instructions).  See _Polaroid Corp. v. Eastman Kodak Co._, 228 U.S.P.Q. (BNA) 305, 320-321 (D. Mass. 1985) ("Although Kodak's position at the time of its own application concerning the patentability of the 165/262 film structure is not decisive on that issue, it is some evidence that claims 3, 5 and 6 of the Rogers patents are valid against the prior art."), aff'd 789 F.2d 1556 (Fed. Cir. 1986); _Colt Indus. Operating Corp. v. Index-Werke KG_, 205 USPQ 990, 1002 (D. D.C. 1979) ("The arguments of the alleged infringer made during prosecution of its own patent application, which included claims covering the invention of the patent in suit [and the infringer's] statements in its promotional campaign extolling the uniqueness and virtues of the accused product are of significant evidentiary value in showing the thinking of those skilled in the art and, as such, tend to show that the patented invention was not obvious."); _Mosinee Paper Corp. v. James River Corporation of Virginia_, 22 USPQ2d 1657, 1661 (E.D. Wis. 1992) ("validity challenger's prior attempt to patent the same concept is telling evidence of nonobviousness"); _Akzo N.V. v. E.I. du Pont de Nemours_, 635 F. Supp. 1336, 1355, 230 USPQ 263, 277 (E.D. Va. 1986) , aff'd, 810 F.2d 1148, 1 USPQ2d 1704, 1707 (Fed. Cir. 1987) ("The fact that DuPont filed a patent application on the same invention claimed in the '374 patent does not preclude DuPont from arguing the obviousness of Akzo's claims, nor does it prevent the Court from concluding in light of the entire record that the invention was obvious. ... The Court, however, does consider that fact as evidence tending to support the presumption of validity."); _Bergstrom v. Sears, Roebuck & Co._, 496 F. Supp. 476, 207 USPQ 481 (D. Minn. 1980) ("laudatory statements made by infringer in its own patent application are relevant though they do not constitute an estoppel"); _American Medical Systems Inc. v. Medical Engineering Corp._, 794 F. Supp. 1370, 1386, 26 USPQ2d 1081, 1090-91 (E.D. Wis. 1992) , aff'd in part, rev'd in part & remanded, 6 F.3d 1523, 28 USPQ2d 1321 (Fed. Cir. 1993) , cert. denied, 511 U.S. 1070 (1994).

*It is common sense that familiar items may have been obvious beyond their primary purposes, and a person of ordinary skill will[43] be able to fit the teachings of multiple patents together likes pieces of a puzzle.  Multiple references in the prior art can be combined to show that a claim is obvious.  Any need or problem known in the field and addressed by the patent can provide a reason for combining the elements in the manner claimed.  To determine whether there was an apparent reason to combine the known elements in the way a patent claims, you can look to interrelated teachings of multiple patents, to the effects of demands known to the community or present in the marketplace, and to the background knowledge possessed by a person of ordinary skill in the art.  Neither the particular motivation of the person of ordinary skill in the art nor the alleged purpose of the patentee controls.  One of ordinary skill in the art is not confined only to prior art that attempts to solve the same problem as the patent claim.*

(c)     Objective Indications

You also must consider what are referred to as objective indications of non-obviousness.  Some of these indications of non-obviousness are:

Long-felt and unmet need in the art for the invention;

E.      Failure of others to achieve the results of the invention;

---

[43] Affinity deleted the term "often" before "will" (which the Court used in *Anasacpe*) because the term "often" could be misunderstood and suggest a reduction in the burden of proof and weight of the presumption of validity.

38

F.      Commercial success of the invention;

G.      Praise of the invention by those in the field;

H.      Expression of disbelief or skepticism by those skilled in the art;

I.      Invention proceeded in a direction contrary to accepted wisdom in the field; and

J.      Invention achieved any unexpected results.

These objective indications are only relevant to obviousness if there is a connection, or nexus, between them and the invention covered by the patent claims.  For example, commercial success is relevant to obviousness only if the success of the product is related to a feature of the patent claims.  If the commercial success is the result of something else, such as innovative marketing, and not to a patented feature, then you should not consider it to be an indication of non-obviousness.

Again, you must compare separately each of the claims of the patent asserted by Affinity with the prior art references to determine whether Defendants have proved by clear and convincing evidence that one or more of the claims was obvious.

39

## <u>Written Description[44] (Plaintiff's Instruction)[45]</u>

<u>For the Patent Office to issue a patent, the[46] patent must meet the "written description" requirement. In order to meet this written description requirement, the specification portion of the Patents-in-Suit must describe an invention understandable to a person of ordinary skill in the art and show that the inventor actually invented the invention claimed. Defendants may establish that a claim of the Patents-in-Suit is invalid by showing, by clear and convincing evidence, that the written description of the invention in the patents is not adequate.</u>

<u>In the patent application process, the applicant may change the claims between the time the patent application is first filed and the time a patent is finally granted. As long as an application is pending, an applicant may amend the claims or add new claims. An applicant may add new patent claims in a new application that are intended to cover another's product about which the applicant learned of</u>

---

[44] As noted in the introductory comments, Affinity has made several substantive changes to this section (in comparison to the *Anascape* instruction on written description) based on the Federal Circuit's decision in *Ariad* and the particular issues raised in this case.

[45] BMW and Hyundai & Kia believe the instructions on Written Description and Enablement should be in a different order, as set forth above in this Invalidity Section. BMW's and Hyundai's & Kia's Proposed Instruction is set forth there.

[46] The *Anascape* instruction states "For a patent to be valid. . . " instead of "For the Patent Office to issue a patent. . . " Affinity made this revision because the *Anascape* formulation could be understood to suggest that Affinity must prove that it is satisfied the written description requirement, as opposed to reflecting that the Patent Office considers this issue in issuing a patent, which gives rise the presumption of validity..

DM1\2334452.1

during the prosecution of the application.  However, for any new claim to satisfy the written description requirement, a person of ordinary skill in the field, reading the specification, must recognize that the specification describes the invention as claimed, even though the description may not use the exact words found in the claim.

The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification.  Rather, the specification itself must describe the invention in the claim, and do so in sufficient detail that one skilled in the art can recognize that the inventor invented the claimed invention.  The level of detail required to satisfy the written description requirement depends on (i) the nature and scope of the claims and (ii) the complexity and predictability of the relevant technology  A disclosure in the specification that merely renders the claim obvious is not sufficient to meet this written description requirement; the specification must describe the claims with all their limitations.

This written description requirement may be satisfied by the words, structures, figures, diagrams, formulas, etc., in the specification, and any combination of them, as understood by one of ordinary skill in the field of the technology of the invention.  It is unnecessary to spell out every detail of the invention in the specification, and the specification does not have to use the same

41

words or phrases as the claims.  Finally, the inventor is not required to build a working example or prototype of the invention.

## Enablement[47]

BMW contends that the invention claimed in claims 28 and 35 of the '833 patent and claims 3, 16, 22 and 28 of the '228 Patent is not enabled.  The written description set forth in a patent must disclose sufficient information to enable or teach one skilled in the field of the invention to make and use the full scope of the claimed invention.[48]  This requirement is known as the enablement requirement.  If BMW proves by clear and convincing evidence that a patent claim is not enabled, then it is invalid.

A patent is enabling if its disclosure is sufficient to enable a person of ordinary skill in the art to make and use the claimed invention without undue experimentation.[49]  The fact that some experimentation may be required for a skilled person to make or use the claimed invention does not mean that a patent's written description fails to meet the enablement requirement.[50]  In considering whether the written description of a patent satisfies the enablement requirement,

---

[47] BMW contends this Instruction should be set forth above with Written Description.

[48] 35 USC § 112, ¶ 1.

[49] 35 USC § 112, ¶ 1; *AK Steel Corp. v. Solloc*, 344 F.3d 1234, 1244 (Fed. Cir. 2003).

[50] *AK Steel*, 344 F.3d at 1244.

42

you must keep in mind that patents are written for persons of skill in the field of the invention. Thus, a patent need not expressly state information that skilled persons would be likely to know or could obtain.[51]  BMW bears the burden of establishing lack of enablement by clear and convincing evidence.[52]

## VII.   Damages

If you find by a preponderance of evidence that a claim has been infringed by any Defendant and you do not find by clear and convincing evidence that the same claim is invalid, then Affinity is entitled to an award of damages from that Defendant adequate to compensate for the infringement.  You should not interpret the fact that I have given instructions about damages as an indication in any way that I believe that Affinity should, or should not, win this case.  It is your task first to decide whether any Defendant is liable.  I am instructing you on damages only so that you will have guidance in the event you decide that one or more Defendants are liable and that Affinity is entitled to recover money from those Defendant(s).

**Plaintiff's Proposed Language:**

You may award Affinity damages for any infringement you have found starting January 29, 2008.  The amount of those damages must be adequate to

---

[51] *AK Steel*, 344 F.3d at 1244; *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1351, 1365 (Fed. Cir. 2006).

[52] *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365, 1375 (Fed. Cir. 2001).

43

compensate Affinity for the infringement. If you reach this issue, in no event may the damages award be less than a reasonable royalty.[53]

### BMW's and Hyundai's & Kia's Proposed Language:

*You may award Affinity damages for any infringement you have found starting August 27, 2008 if you find the '833 patent infringed and starting December 15, 2009 if you find the '228 patent alone is infringed. The amount of those damages, if any, must be adequate to compensate Affinity for the infringement. Your damages award, if you reach this issue, should put the patent holder in approximately the same financial position that it would have been had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.[54]*

Affinity has the burden to establish the amount of its damages by a preponderance of the evidence. Damages are limited to acts of infringement in the United States. You should award only those damages that Affinity establishes that

---

[53] The *Anasacpe* instruction included the phrase "should put the patent holder in approximately the same financial position that it would have been in had the infringement not occurred." Affinity deleted that because it appears to be based on a lost profits analysis and is inconsistent with the test and law related to a reasonable royalty (which is what Affinity is seeking).

[54] The *Anasacpe* instruction included the phrase "should put the patent holder in approximately the same financial position that it would have been in had the infringement not occurred." Affinity deleted that because it appears to be based on a lost profits analysis and is inconsistent with the test and law related to a reasonable royalty (which is what Affinity is seeking).

44

it more likely than not suffered.  Affinity is not entitled to damages that are remote

or speculative or based on guesswork.  While Affinity is not required to prove its

damages with mathematical precision, it must prove them with reasonable

certainty.

In this case, Affinity is seeking damages in the form of a reasonable royalty.

A royalty is the amount of money a licensee pays to a patent owner for use made of

the invention under the patent.  A reasonable royalty is the amount of money a

willing patent owner and a willing prospective licensee would have agreed upon at

the time of the infringement for a license to make use of the invention.  It is the

royalty that would have resulted from an arm's-length negotiation between a

willing licensor and a willing licensee, assuming that both parties believed the

claims in question to be valid and infringed and that the licensee would respect the

patent.  You should assume that a separate negotiation between Affinity and each

Defendant would have occurred around the time that you determine that Defendant

began infringing one of the Patents-in-Suit.  In making your determination of the

amount of a reasonable royalty, it is important that you focus on the time period

when the infringer first infringed the patents and the facts that existed at that time.

Your determination does not depend on the actual willingness of the parties to this

lawsuit to engage in such negotiations.  Your focus should be on what the parties'

expectations would have been had they entered negotiations at the time the infringing activity began and the facts that existed at the time.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time infringement began.  Some of the kinds of factors that you may consider in making your determination are:

(1)     whether the patent holder had an established royalty for the invention; in the absence of such a licensing history, any royalty arrangements that were generally used and recognized in the particular industry at that time.   In this connection, when evaluating evidence about amounts paid under other licenses and agreements, you should consider whether such licenses and to what extent the license was comparable -- that is, was the technology exchanged and the terms of the agreement similar in terms and scope to the in the hypothetical negotiation;

(2)     the nature of the commercial relationship between the patent owner and the licensee such as whether they were competitors or whether their relationship was that of an inventor and a promoter;

(3)     the established profitability of the patented method or system, its commercial success and its popularity at the time;

(4)     whether the patent owner had an established policy of granting licenses or retaining the patented invention as its exclusive right, or whether the patent holder had a policy of granting licenses under special conditions designed to preserve its exclusivity;

(5)     the size of the anticipated market for the invention at the time the infringement began;

(6)     the duration of the patents and of the license, as well as the terms and scope of the license, such as whether it is exclusive or nonexclusive or subject to territorial restrictions;

(7)     the rates paid by the licensee for the use of other patents comparable to the plaintiff's patents;

DM1\2334452.1

(8)     whether the licensee's sales of the patented invention promote sales of its other methods or systems and whether the invention generates sales to the inventor of his nonpatented items;

(9)     the utility and advantages of the patent property over the old methods or systems, if any, that had been used for working out similar results;

(10)    the extent to which the infringer used the invention, and any evidence probative of the value of such use;

(11)    the portion of the profits in the particular business that are customarily attributable to the use of the invention or analogous inventions;

(12)    the portion of the profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks or significant features or improvements added by the infringer;

(13)    the opinion and testimony of qualified experts and of the patent holder;

(14)    any other factors which, in your mind, would have increased or decreased the royalty the infringer would have been willing to pay and the patent owner would have been willing to accept, acting as normally prudent business people;

(15)    the amount that a licensor and a licensee would have agreed upon just before the earliest infringed patent was issued if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee who desired, as a business proposition, to obtain a license to use a particular system or method embodying the patented invention would have been willing to pay as a royalty and still be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

*BMW's and Hyundai's & Kia's Proposed Instructions:*

*You must focus on the question of damages separately for each defendant.  If*

*you find that any particular defendant has infringed the patent, you must determine*

47

*what damages are adequate to compensate Affinity for that infringement.  You may*

*award damages against some defendants, but not all, if you conclude that only*

*some defendants have infringed one or more claims of the patents-in-suit.*[55]

### VIII.   Instructions for Deliberations

It is your sworn duty as jurors to discuss the case with one another in an

effort to reach agreement if you can do so.  Each of you must decide the case for

yourself, but only after full consideration of the evidence with the other members

of the jury.  While you are discussing the case, do not hesitate to re-examine your

own opinion and change your mind if you become convinced that you are wrong.

However, do not give up your honest beliefs solely because the others think

differently, or merely to finish the case.

Remember that in a very real way you are the judges—judges of the facts.

Your only interest is to seek the truth from the evidence in the case.

**Plaintiff's Proposed Instructions:**

Do not let bias, prejudice or sympathy play any part in your deliberations.

This case should be considered and decided by you as an action between persons

of equal standing in the community, of equal worth and holding the same or similar

stations in life.  Regardless of whether a party is a corporation or a private

---

[55] Affinity does not believe this additional paragraph is necessary, however, if the Court accepts this additional language, Affinity objects to it being formatted in bold typeface.

48

individual, each is entitled to the same fair trial at your hands.[56]  All persons, corporations and other organizations stand equal before the law, and are to be dealt with as equals in a court of justice.

### BMW's and Hyundai's & Kia's Proposed Instructions:

*Do not let bias, prejudice or sympathy play any part in your deliberations. This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth and holding the same or similar stations in life.  A corporation is entitled to the same fair trial at your hands as a private individual and should be treated as such.  All persons, corporations and other organizations stand equal before the law, and are to be dealt with as equals in a court of justice.*

When you retire to the jury room to deliberate on your verdict, you will take this charge with you as well as exhibits which the Court has admitted into evidence.  When you go to the jury room, the first thing that you should do is select one of your number as your Foreperson, who will help to guide your deliberations and will speak for you here in the courtroom.  You should then begin your deliberations.  If you recess during your deliberations, follow all of the instructions that the Court has given you on your conduct during the trial.  Do not discuss the case unless all jurors are present in the jury room.  After you have reached your

---

[56] Affinity revised this sentence form the *Anascape* instruction to make the point more evenly.

unanimous verdict, your Foreperson must fill in your answers to the written questions and initial and date the verdict form.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.  You must never disclose to anyone, not even to me, your numerical division on any question.  If you want to communicate with me at any time, please give a written message or question to the court security officer, who will bring it to me.  I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally.

The presiding juror or any other juror who observes a violation of the Court's instructions shall immediately warn the one who is violating the same and caution the juror not to do so again.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.  You may now retire to the jury room to conduct your deliberations.

SIGNED _____, 2010

_____
Judge Ron Clark
United States District Judg

50