IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| AFFINITY LABS OF TEXAS, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION No. 9:08CV164 |
| v. | § | |
| | § | |
| HYUNDAI MOTOR AMERICA, | § | JUDGE RON CLARK |
| INC.; HYUNDAI MOTOR | § | |
| MANUFACTURING ALABAMA | § | |
| LLC; VOLKSWAGEN GROUP OF | § | |
| AMERICA, INC.; and KIA MOTORS | § | |
| AMERICA, INC., | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

## JURY INSTRUCTIONS

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you, the jury, are the judges of the facts. Do not consider any statement that I have made in the course of the trial, or make in these instructions, as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence

1

and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

It is my duty as Judge to explain what some of the words used in the patent claims mean. Attached as Appendix A to this charge are the claim terms I have defined for you. These are the same definitions found in the "Definitions" section of your juror notebooks. You must accept as correct the definitions contained in Appendix A. The words "a" or "an" in a patent claim mean "one or more." Attached as Appendix B to this charge is the definition of a "person of ordinary skill in the art." This is the same definition that is found in the "Glossary" section of your juror notebooks. The words and terms of the patents that I have not defined for you in Appendix A are to be given their ordinary and accustomed meaning as understood by a person of ordinary skill in the art, in the context of the patent specifications and file history.

When words in these instructions and in the definitions in Appendix A are used in a sense that varies from their commonly understood meaning, you are given a proper legal definition, which you are bound to accept in place of any other meaning. The other words in these instructions, and in the definitions I have provided to you, have the meaning commonly understood.

Answer each question based on the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

### I. What Is and What Is Not Evidence

You will be instructed to answer some questions based upon a "preponderance of the evidence." This means you must be persuaded by the evidence that what the party seeks to prove is more likely true than not true. You will be instructed to answer other questions by "clear and convincing evidence." This is a higher burden than by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt. Clear and convincing evidence is evidence that shows what the party seeks to prove is highly probable.

In deciding whether any fact has been proved in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, all exhibits received in evidence, regardless of who may have produced them, and the facts to which the parties have stipulated. Attached as Appendix C to this charge is a list of facts to which the parties have stipulated. You must treat all of the stipulated facts as having been proved.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely

concerning some important fact, or whether there was evidence that at some other time, the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory, and the significance of that may depend on whether it has to do with an important fact or only with an unimportant detail.

If scientific, technical, or other specialized knowledge may be helpful to the jury, a witness with special training or experience may testify and state an opinion concerning such matters. However, you are not required to accept that opinion. You should judge such testimony like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the soundness of the reasons given for the opinion, and all other evidence in the case. In deciding whether to accept or rely upon the opinion of such a witness, you may consider any bias of the witness, including any bias you may

4

infer from evidence that the witness has been or will be paid for reviewing the case and testifying, or from evidence that he or she testifies regularly.

In making up your mind and reaching your verdict, do not make your decisions simply because there were more witnesses on one side than on the other. Do not reach a conclusion on a particular point just because there were more witnesses testifying for one side on that point. The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw, from the facts that have been established by the testimony and evidence in the case.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence, the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial

evidence, but simply requires that you find the facts from all the evidence, both direct and circumstantial.

During the trial, I sustained objections to certain questions. You must disregard those questions entirely. Do not speculate as to what the witness would have said if he or she had been permitted to answer the question.

Also, do not assume from anything I may have done or said during the trial that I have any opinion concerning any of the issues in this case. Except for the instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own findings as to the facts.

If you have taken notes they are to be used only as aids to your memory, and if your memory should be different from your notes, you should rely on your memory and not on your notes. If you did not take notes, rely on your own independent memory of the testimony. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than the recollection of each juror concerning the testimony.

## II. The Nature of the Action, the Parties, and the Contentions

The patents involved in this case are referred to as the '833 and the '228 patents. The Plaintiff, Affinity Labs of Texas, LLC ("Affinity Labs") contends that the Defendants, Hyundai Motor America, Inc. and Hyundai Motor Manufacturing

6

Alabama LLC (collectively "Hyundai"); Kia Motors America, Inc. ("Kia"); and Volkswagen Group of America, Inc. ("Volkswagen") infringe Claims **28** and **35** of the '833 patent and Claims **3**, **22**, and **28** of the '228 patent. Each of the asserted patent claims is to be considered separately as a separate invention. Further, each of the Defendants is entitled to have the allegations against it considered separately.

You have the responsibility of deciding whether Hyundai, Kia, and Volkswagen infringed the asserted claims of the patents-in-suit. Even though the PTO Examiner has allowed the claims of the patents, you, the jury, also have the responsibility for deciding whether the claims of the patents are valid.

### III. Claims and Claim Interpretation

To decide the questions of infringement and invalidity, you must first understand what the claims of the patents cover, that is, what they prevent anyone else from doing. This is called "claim interpretation." You must use the same claim interpretation for both your decisions on infringement and your decisions on invalidity. I instructed you earlier on the definitions you must use in interpreting claims.

The patent claims are the numbered sentences at the end of the patents-in-suit. Each claim describes a separate invention. The claims are "word pictures" intended to define, in words, the boundaries of the inventions. Only the claims of a patent can

7

be infringed. Neither the written description, sometimes called the specification, nor the drawings of a patent can be infringed. Each of the claims must be considered individually.

The claims are divided into parts called "limitations." For system claims, which describe a physical entity, these limitations may also be referred to as "elements." For method claims, which describe an activity or a series of steps to perform a process, these limitations may also be referred to as "steps."

In this case, there are five claims. Claims **28** and **35** of the '833 patent and Claims **22** and **28** of the '228 patent are system claims that describe a physical system. Claim **3** of the '228 patent is a method claim that describes a series of steps to perform a process. You shall give your decisions on infringement based only on these claims as set out in your juror notebooks, and shall not consider other claims in the patents-in-suit.

Patent claims may exist in two forms, referred to as independent claims and dependent claims. An independent claim does not refer to any other claim of the patent. Thus it is not necessary to look at any other claim to determine what an independent claim covers. Claim **28** of the '833 patent and Claim **22** of the '228 patent are independent claims.

A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the limitations of the other claim or claims to which it refers, as well as the additional limitations recited in the dependent claim itself. Therefore, to determine what is covered by a dependent claim, it is necessary to look both at the dependent claim itself and the claim or claims to which it refers. Claim **35** of the '833 patent and Claims **3** and **28** of the '228 patent are dependent claims. Claim **35** of the '833 patent depends from Claim 34, which depends from Claim **28**; Claim **3** of the '228 patent depends from Claim 1; and Claim **28** of the '228 patent depends from Claim **22**.

## IV. Infringement

You must determine, separately for each of the asserted claims, whether or not there is infringement. As I have explained to you, a dependent claim includes all of the requirements of the claim(s) to which it refers, plus additional requirements of its own. Therefore, if you find that an independent claim is not infringed, then you must also find that any claim that depends from it is not infringed. On the other hand, if you find that an independent claim is infringed, you must still decide, separately, whether the additional requirements of any claims that depend from it have also been infringed.

There are two ways in which a patent claim can be infringed: (1) "direct infringement"; and (2) "indirect infringement."

## A. Direct Infringement

I will first explain the circumstances under which you may find direct infringement. To show direct infringement of a claim, Affinity Labs must prove by a preponderance of the evidence that during the time the patent is in force, the Defendant has made, used, sold, or offered to sell within the United States a product or method that incorporates all of the limitations of that claim, and has done so without Affinity Labs's permission. You must compare each of the Defendants' accused products separately with each and every one of the limitations of each asserted claim to determine whether Affinity Labs has shown, by a preponderance of the evidence, that each limitation of a claim is found in that product or performed by the method that the product performs. To infringe a method claim, a person must have practiced all steps of the claimed method.

A claim limitation is present in an accused product if it exists in the product just as it is described in the claim language, either as I have defined that language for you, or if I did not define it, as that language is commonly understood. If a Defendant's product omits even a single element or step recited in a claim, then you

must find that, with respect to that product, the Defendant has not infringed that claim.

Someone can directly infringe a patent without knowing that what they are doing is an infringement of the patent. A Defendant may also directly infringe even though it believes in good faith that what it is doing is not an infringement of any patent. On the other hand, someone does not infringe by inventing a new and different way of accomplishing the same result, that is, to create a product that does not incorporate all of the limitations of any claim of the patents-in-suit.

## B. Indirect Infringement

I will now explain the circumstances under which you may find indirect infringement. There are two types of indirect infringement: (1) "inducing infringement"; and (2) "contributory infringement." The act of encouraging or inducing others to infringe a patent is called "inducing infringement." The act of contributing to the infringement of others by, for example, supplying them with components used in the patented invention is called "contributory infringement."

There can be no indirect infringement unless someone is directly infringing the patent. Thus, in order to prove that Hyundai, Kia, and Volkswagen are inducing another person to infringe or contributing to the infringement of another, Affinity

11

Labs must prove by a preponderance of the evidence that another person has directly infringed the patent.

## 1. Inducing Infringement

A Defendant induces patent infringement if it purposefully causes, urges, or encourages another to infringe a patent. To show induced infringement of a claim, Affinity Labs must prove by a preponderance of the evidence that:

(1)     During the time the patent is in force, the Defendant has taken action that encourages acts by another person;

(2)     The encouraged acts constitute direct infringement of the claim;

(3)     The Defendant is aware of the patent, and knows or should have known that the encouraged acts constitute infringement of the patent;

(4)     The Defendant has a specific intent to cause the encouraged acts; and

(5)     The encouraged acts are actually carried out by the other person.

Unlike direct infringement, inducing infringement cannot occur unintentionally. The specific intent requirement may be shown by circumstantial evidence, and is not so narrow as to permit a Defendant to actively disregard or turn a blind eye toward a known risk that the encouraged acts constitute direct infringement.

12

Opinion of counsel evidence can be used to show that a Defendant did not believe that use of its product infringed and therefore that the Defendant did not purposefully encourage another's infringement. In evaluating a Defendant's reliance on the advice of a lawyer, you may consider when the Defendant obtained the advice and whether or not the Defendant relied upon the advice. Failure to procure an opinion of counsel may be used as circumstantial evidence of intent to infringe.

## 2. Contributory Infringement

Contributory infringement can occur when a supplier provides a part or a component to another person for use in a patented product, system, or process. The component must be a significant part of the invention. To show contributory infringement of a claim, Affinity Labs must prove by a preponderance of the evidence that:

(1)    The Defendant sells or offers to sell within the United States a component of a product, system, or process during the time the patent is in force;

(2)    The only substantial use for the component is in a product, system, or process that is covered by the claim—in other words, that the component has no substantial, non-infringing use other than the alleged infringing use;

(3)    The Defendant is aware of the patent and is on notice that the product(s), system(s), or process(es) for which the component has no other substantial use may be covered by a claim of the patent; and

(4)   The component has been used by another person in a manner that directly infringes the claim.

## V. Invalidity

Only a valid patent may be infringed. To be valid, the inventions claimed in a patent must be new and non-obvious. A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made. In addition, to be valid, the inventions claimed in a patent must be adequately described.

Even though the PTO has allowed the claims of the patents-in-suit, you the jury have the responsibility for deciding whether each claim in question is valid. Hyundai, Kia, and Volkswagen must prove invalidity by clear and convincing evidence. I will now explain to you the Defendants' grounds for invalidity in detail. In making your determination as to invalidity, you should consider each claim separately.

## A. Anticipation and Obviousness

For a patent to be valid, the invention claimed in the patent must be new and non-obvious in light of what came before. That which came before is referred to as the "prior art." Hyundai, Kia, and Volkswagen contend that the asserted claims of the patents-in-suit are not valid because they are described in one or more prior art references. There are two ways in which the Defendants contend that the invention

14

described in a particular claim is invalid because of the prior art. These ways are sometimes called "anticipation" and "obviousness," and I will describe them for you below. But before I discuss anticipation and obviousness, I will first instruct you on the prior art.

## 1. Prior Art

Hyundai, Kia, and Volkswagen are relying on several items of prior art. The parties agree that the following items are prior art, and there is no dispute that these items came before the inventions claimed in the patents-in-suit:

(1)   The Abecassis patent, United States Patent Number 6,192,340 [Exhibit No. DX245];

(2)   The Sony Player [Exhibit No. DX300];

(3)   The Network Vehicle [See Exhibit No. VDX70];

(4)   The Berry patent, United States Patent Number 6,559,773 [Exhibit No. DX152];

(5)   The ICES System [See Exhibit Nos. VDX136 & VDX139]; and

(6)   The Empeg Player [See Exhibit Nos. VDX131, VDX132, & VDX133].

I will now explain anticipation and obviousness, the two ways in which a patent claim may be invalid in light of the prior art.

## 2. Anticipation

A patent claim is invalid if the claimed invention is not new. For a claim to be invalid because it is not new, all of the claim's limitations must have existed in a single item of prior art as described above. If a patent claim is not new, we say it is "anticipated" by a prior art reference. The Defendants must prove anticipation by clear and convincing evidence.

Hyundai, Kia, and Volkswagen assert that:

(1)     Claims **28** and **35** of the '833 patent are anticipated by the Abecassis patent [Exhibit No. DX245]; and

(2)     Claim **22** of the '228 patent is anticipated by the Sony Player [Exhibit No. DX300].

A patent claim is anticipated by an item of prior art if each and every limitation of the claim is present in that item of prior art. You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present. Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art, and if a person of ordinary skill in the art would understand that to be the case.

16

## 3. Obviousness

A patent claim is invalid if it would have been obvious to a person of ordinary skill in the art at the time the invention was made. Unlike anticipation, obviousness may be shown by considering multiple items of prior art in combination with each other. The Defendants must prove obviousness by clear and convincing evidence.

Hyundai, Kia, and Volkswagen contend that, to a person of ordinary skill in the art at the time the invention was made:

(1)   Claims **28** and **35** of the '833 patent and Claims **3, 22**, and **28** of the '228 patent are obvious in light of the Network Vehicle [See Exhibit No. VDX70] in combination with the Empeg Player [See Exhibit Nos. VDX131, VDX132, & VDX133];

(2)   Claims **28** and **35** of the '833 patent and Claims **3, 22**, and **28** of the '228 patent are obvious in light of the Berry patent [Exhibit No. DX152] in combination with the ICES System [See Exhibit Nos. VDX136 & VDX139]; and

(3)   Claims **3** and **28** of the '228 patent are obvious in light of the Sony Player [Exhibit No. DX300] in combination with the Abecassis patent [Exhibit No. DX245].

The question is, would it have been obvious to a person of ordinary skill in the art who knew of these particular items of prior art listed for a particular claim to make the invention described in the claim at issue? If the answer to that question is "yes," then that patent claim is invalid.

17

Obviousness is determined from the perspective of a person of ordinary skill in the art. The issue is not whether the claimed invention would have been obvious to you, to me as a judge, or to a genius in the field of the invention. Rather, the question is whether or not the invention would have been obvious to a person of ordinary skill in the field of the invention.

You should not use hindsight when comparing the claimed invention to the prior art for obviousness. That is, when making a determination of obviousness or non-obviousness, you must consider only what was known to a person of ordinary skill in the art at the time the invention was made. You must not judge the invention in light of what is known today.

In determining whether or not the asserted claims of the patents-in-suit would have been obvious, you should make the following determinations from the perspective of a person of ordinary skill in the art, as I have previously defined that person for you. First, what is the scope and content of the prior art? Second, what are the differences, if any, between the claimed invention and the prior art? Third, what was the level of ordinary skill in the art at the time the invention was made? Fourth, what evidence is there, if any, of certain additional considerations relating to the obviousness or non-obviousness of the invention?

18

You must decide, in view of the evidence presented to you on each of these factors, whether the claimed inventions would have been obvious. You must make this determination separately for each asserted claim in light of each combination listed above. I will now give you more detailed instructions on each of the factors that you must consider.

**(a) Scope and Content of the Prior Art**

Determining the scope and content of the prior art means that you should determine what is disclosed in each combination of art relied upon by Hyundai, Kia, and Volkswagen. You should evaluate only those references that are listed in the combinations above.

When evaluating what is disclosed in the prior art combinations relied upon by the Defendants, you must decide whether the prior art references were reasonably relevant to the particular problem that the inventor faced in making the invention covered by the patent claim at issue. Relevant prior art includes prior art from the field of the invention, and also prior art from other fields that a person of ordinary skill would look to when attempting to solve the problem.

During the trial, the Defendants introduced evidence of other items of art that are not listed in the above combinations. Those other items are not "prior art" as that

term is defined in these instructions, and you should not consider those other items when determining the scope and content of the prior art.

**(b) Differences Between Claimed Inventions and Prior Art**

In determining whether there are any differences between the inventions covered by the patent claims and the prior art, you should not look at the individual differences in isolation. You must consider each claimed invention as a whole and determine whether or not it would have been obvious in light of the prior art.

If you conclude that the prior art discloses all the elements or steps of the claimed invention, but those elements or steps are found in separate items of prior art, you may consider whether or not it would have been obvious to combine those items. A claim is not obvious merely because all of the limitations of that claim already existed in the prior art.

In deciding whether it would have been obvious to combine what is described in various items of prior art, you should consider whether or not there was some motivation or suggestion for a person of ordinary skill to make the combination covered by the claimed invention. To determine whether there was an apparent reason to combine the known elements or steps in the way a patent claims, you can look to interrelated teachings of multiple prior art references, to the effects of demands known to the community or present in the marketplace, and to the background

knowledge possessed by a person of ordinary skill in the art. You should also consider whether a person of ordinary skill in the art would have been discouraged from following the path taken by the inventor.

**(c) Level of Ordinary Skill in the Art**

Obviousness is determined from the perspective of a person of ordinary skill in the art as I have defined that person for you. This person is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, the person of ordinary skill in the art is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem. When evaluating the level of ordinary skill in the art, you may consider material that is not technically "prior art" as that term is defined in these instructions. That is, in addition to the items that are listed in the combinations above, you may also consider the other items introduced during the trial that are contemporaneous with the date of invention of the claim at issue, because these other items may reflect the knowledge of a person of ordinary skill in the art at the time.

**(d) Additional Considerations**

You also must consider what are referred to as "additional considerations." Some of these considerations are:

(1)     Whether there was a long-felt but unmet need in the art that was satisfied by the invention;

(2)     Whether others tried but failed to achieve the results of the invention;

(3)     Whether products covered by the patent claims achieved commercial success;

(4)     Whether others in the field praised the invention;

(5)     Whether those skilled in the art expressed surprise or disbelief regarding the invention;

(6)     Whether the invention achieved any unexpected results;

(7)     Whether the inventors or the invention proceeded in a direction contrary to accepted wisdom in the field;

(8)     Whether others copied the invention;

(9)     Whether others have taken licenses to use the invention; and

(10)   Whether others of ordinary skill in the art independently made the claimed invention at about the same time the inventors made the invention.

These considerations are only relevant to obviousness if there is a connection, or nexus, between them and the invention covered by the patent claims. For example, commercial success is relevant to obviousness only if the success of the product is related to a feature of the patent claims. If the commercial success is the result of something else, such as innovative marketing, and not the result of a patented feature, then you should not consider it to be an indication of non-obviousness.

In conclusion, you must compare separately each of the asserted claims of the patents-in-suit with the prior art references listed above in light of the four factors I have described for you, to determine whether Hyundai, Kia, and Volkswagen have proved by clear and convincing evidence that one or more of the claims would have been obvious to a person of ordinary skill in the art at the time the invention was made.

## B. Written Description

To be valid, the inventions claimed in a patent must be adequately described in the patent. In the patent application process, the applicant may delete matter from the specification, but no new matter may be added. The applicant may change the claims between the time the patent application is first filed and the time a patent is finally granted. An applicant may amend the claims or add new claims, and these changes may narrow or broaden the scope of the claims. It is neither illegal nor improper for an applicant to amend or insert claims to cover a competitor's product that the applicant or the applicant's attorney has learned about during the prosecution of the patent application for the purpose of obtaining a right to exclude the competitor's product from the market. However, to be valid, the new or amended claims must be fully disclosed in the original application. Hyundai, Kia, and Volkswagen may establish that a patent claim is invalid by showing by clear and

convincing evidence that the written description of the invention in the patent is not adequate as to that claim.

In deciding whether the patents-in-suit satisfy the written description requirement as to the asserted claims, you must consider the description in the patents from the viewpoint of a person of ordinary skill in the art. The written description requirement is satisfied if a person of ordinary skill in the art reading the patent application as originally filed would recognize that it describes the inventions as finally claimed in the issued patent. In other words, the disclosure in the original application must reasonably convey to those of ordinary skill in the art that the inventors had possession of, i.e. actually invented, the claimed subject matter as of the original application's filing date.

The written description requirement may be satisfied by the words, structures, figures, diagrams, formulas, etc. in the patent application, and any combination of them, as understood by a person of ordinary skill in the art. The patent application need not recite the claimed invention verbatim. A claim requirement need not be expressly disclosed provided that a person of ordinary skill in the art would have understood that the missing requirement is inherent in the written description contained in the application. However, a description that merely renders the claimed

invention obvious does not satisfy the written description requirement. The disclosure must describe, expressly or inherently, the claim with all its limitations.

## VI. Damages

If you find by a preponderance of evidence that a claim has been infringed and you do not find by clear and convincing evidence that the same claim is invalid, then Affinity Labs is entitled to an award of damages adequate to compensate for the infringement. You should not interpret the fact that I have given instructions about damages as an indication in any way that I believe that Affinity Labs should, or should not, win this case. It is your task first to decide whether Hyundai, Kia, and Volkswagen are liable. I am instructing you on damages only so that you will have guidance in the event you decide that one or more of the Defendants are liable and that Affinity Labs is entitled to recover money from them.

You may award Affinity Labs damages for any infringement you have found. The amount of those damages must be adequate to compensate Affinity Labs for the infringement. Your damages award, if you reach this issue, may not be less than a reasonable royalty. I will give you more detailed instructions on the calculation of a reasonable royalty shortly. You may not add anything to the amount of damages to punish the Defendants or to set an example.

Affinity Labs has the burden to establish the amount of its damages by a preponderance of the evidence. Damages are limited to acts of infringement in the United States. You should award only those damages that Affinity Labs establishes that it more likely than not suffered. Affinity Labs is not entitled to damages that are remote or speculative or based on guesswork. While Affinity Labs is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.

If you find that Affinity Labs has established infringement, it is entitled to at least a reasonable royalty to compensate for that infringement. A royalty is the amount of money a licensee pays to a patent owner in exchange for the right to make, use, or sell the claimed inventions under the patent. A reasonable royalty is the amount of money a patent owner who was willing to grant a license to the patented invention(s) and a prospective licensee who was willing to pay for that license would have agreed upon at the time the infringement first began. It is the royalty that would have resulted from an arm's-length negotiation between a willing patent owner and a willing licensee assuming that both parties believed the claims in question to be valid and infringed.

In making your determination of the amount of a reasonable royalty, it is important that you focus on the time period when the infringer first infringed the

patent and the facts that existed at that time. The time when infringement first began will depend on whether you have found infringement of one or both of the patents-in-suit, and on whether you have found direct or indirect infringement or both.

A Defendant's direct infringement began when that Defendant first made, used, sold, or offered to sell an infringing product during the term of the patent at issue. The '833 patent's term began on January 29, 2008. Direct infringement of the '833 patent could not have begun before that date. The '228 patent's term began on December 15, 2009. Direct infringement of the '228 patent could not have begun before that date.

Both kinds of indirect infringement require that the Defendant be aware of the patent in order to infringe. The parties agree that Hyundai, Kia, and Volkswagen were not aware of the patents-in-suit until August 27, 2008. Indirect infringement of the '833 patent could not have begun before that date. Indirect infringement of the '228 patent could not have begun before the patent's term began on December 15, 2009.

During the trial, you may have heard evidence of things that happened after the time when the infringement first began. That evidence can be considered only to the extent that it aids you in assessing what royalty would have resulted from a negotiation taking place at the time when the infringement first began.

Your determination does not depend on the actual willingness of the parties to this lawsuit to engage in such negotiations. Your focus should be on what the parties' expectations would have been had they entered negotiations at the time the infringing activity began and the facts that existed at the time. In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)     Whether the patent holder had an established royalty for the invention, or in the absence of such a licensing history, any royalty arrangements that were generally used and recognized in the particular industry at that time. When evaluating evidence about amounts paid under other licenses and agreements, you should consider whether and to what extent such licenses were comparable, that is, were the technology exchanged and the terms of the agreement similar in terms and scope to the technology of the patents-in-suit and the license for the patent in the hypothetical negotiation;

(2)     The nature of the commercial relationship between the patent owner and the licensee, such as whether they were competitors or whether their relationship was that of an inventor and a promoter;

(3)     The established profitability of the patented product or method, its commercial success, and its popularity at the time;

(4)     Whether the patent owner had an established policy of granting licenses or retaining the patented invention as its exclusive right, or whether the patent holder had a policy of granting licenses under special conditions designed to preserve its exclusivity;

(5)     The size of the anticipated market for the invention at the time the infringement began;

(6)     The duration of the patent and of the license, as well as the terms and scope of the license, such as whether it is exclusive or nonexclusive or subject to territorial restrictions;

(7)     The rates paid by the licensee for the use of other patents comparable to the Plaintiff's patent;

(8)     Whether the licensee's sales of the patented invention promote sales of its other products and whether the invention generates sales to the inventor of his non-patented items;

(9)     The utility and advantages of the patent property over the old products or methods, if any, that had been used for accomplishing similar results;

(10)    The extent to which the infringer used the invention, and any evidence probative of the value of such use;

(11)    The portion of the profits in the particular business that are customarily attributable to the use of the invention or analogous inventions;

(12)    The portion of the profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

(13)    The opinion and testimony of qualified experts and of the patent holder; and

(14)    Any other factors that, in your mind, would have increased or decreased the royalty the infringer would have been willing to pay and the patent owner would have been willing to accept, acting as normally prudent business people.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. The final factor establishes the framework that you should use in determining a reasonable royalty, i.e. the payment that would have resulted from a negotiation taking place at the time when the infringement first began between Affinity Labs and each Defendant you have found to infringe.

## VII. Instructions for Deliberations

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because others think differently, or merely to finish the case.

Remember that in a very real way you are the judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

Do not let bias, prejudice, or sympathy play any part in your deliberations. This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. A corporation is entitled to the same fair trial at your hands as a private individual and should be treated as such. The law is no respecter of persons; all persons, including corporations and other organizations, stand equal before the law, and are to be dealt with as equals in a court of justice.

When you retire to the jury room to deliberate on your verdict, you will take this charge with you, as well as the exhibits that the court has admitted into evidence.

31

When you go to the jury room, the first thing that you should do is select one of your number as your Foreperson, who will help to guide your deliberations and will speak for you here in the courtroom. The Foreperson should read, or have another juror read, these instructions to the jury. You should then begin your deliberations.

If you recess during your deliberations, follow all of the instructions that I have given you on your conduct during the trial. Do not discuss the case unless all jurors are present in the jury room.

After you have reached your unanimous verdict, your Foreperson must fill in your answers to the written questions and initial and date the verdict form. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.

You must never disclose to anyone, not even to me, your numerical division on any question. If you want to communicate with me at any time, please give a written message or question to the court security officer, who will bring it to me. I will then respond as promptly as possible, either in writing or by having you brought into the courtroom so that I can address you orally.

The presiding juror or any other juror who observes a violation of the court's instructions shall immediately warn the one who is violating the same and caution the juror not to do so again.

32

After you have reached a verdict, you are not required to talk with anyone about the case unless the court orders otherwise. You may now retire to the jury room to conduct your deliberations.

**SIGNED** October 28 , 2010.

Judge Ron Clark
United States District Judge

## APPENDIX A

Remember that Plaintiff has only asserted certain claims. These are numbered in **bold** (for example: claim **28**). The terms defined below may also appear in other claims that are referred to by an asserted claim. For example, claim **3** of the '228 patent refers to claim 1 of the '228 patent. The term "outputting a played version of the media file" is shown below as appearing in claim **3**. This term is actually found in claim 1, but claim 1 is not itself asserted.

This is also true for the following claims of the patents-in-suit: (1) claim **35** of the '833 patent refers to claim 34, which refers to claim **28** of the '833 patent; and (2) claim **28** of the '228 patent refers to claim **22** of the '228 patent.

| TERM | DEFINITION | PATENT AND CLAIM(S) WHERE TERM APPEARS |
|---|---|---|
| "A mount" | **Definition:** a structure in or on which the portable electronic device is placed, inserted, or attached, such as a docking station or cradle | '833 Patent: claims **28** and **35** |
| "Portable electronic device" | **Definition:** an electronic device that can be easily moved by a user from one location to another and that can be operated in a mobile environment independent of, or untethered to, another system | '833 Patent: claims **28** and **35**<br><br>'228 Patent: claims **22** and **28** |

| TERM | DEFINITION | PATENT AND CLAIM(S) WHERE TERM APPEARS |
|---|---|---|
| "Configured to . . . communicate a collection of information . . . such that a user can interact with the electronic device . . . to view at least a partial representation of the menu on the associated display" | **Definition:** able to send at least the information necessary for the second electronic device to display at least a partial representation of the graphical menu on the portable electronic device | '833 Patent:  claims **28** and **35** |
| "Name" | **Definition:** a word or group of words that identifies an audio file, a group of audio files, or a media file | '833 Patent:  claims **28** and **35**<br><br>'228 Patent:  claims **3**, **22**, and **28** |
| "To associate the audio file with a name" | **Definition:** to recognize an existing connection or to establish a connection between the electronic data representing the audio file and the electronic data representing the name | '833 patent:  claims **28** and **35** |
| "Soft buttons" | **Definition:** software-rendered graphics that a user can select by pushing the screen display or by pushing an associated physical button | '833 Patent:  claims **28** and **35**<br><br>'228 Patent:  claims **3**, **22**, and **28** |

| TERM | DEFINITION | PATENT AND CLAIM(S) WHERE TERM APPEARS |
|---|---|---|
| "Audio information source" | **Definition:** a provider of electronically transmitted information such as songs, on-line radio stations, on-line broadcasts, streaming audio, video, text, or other selectable information | '833 Patent: claims **28** and **35** |
| "Preprogrammed soft buttons that are linked to respective audio information sources" | **Definition:** software-rendered graphics (1) that customize the display as directed by the user via the portable electronic device, the different electronic device, or some other electronic device; (2) that a user can select by pushing the screen display or by pushing an associated physical button; and (3) that are linked to a specific audio information source accessible through the portable electronic device | '833 Patent: claims **28** and **35** |
| "Playing the media file" | **Definition:** processing data in the media file into an electronic signal that the different electronic device can use to produce sound and/or visual images | '228 Patent: claim **3** |
| "The audio file can be played by the portable electronic device" | **Definition:** the portable electronic device can process data in the audio file into an electronic signal that the other electronic device can use to produce sound | '228 Patent: claims **22** and **28** |

| TERM | DEFINITION | PATENT AND CLAIM(S) WHERE TERM APPEARS |
|------|-----------|-----------------------------------------|
| "Outputting a played version of the media file" | **Definition:** sending, by the portable hand-held device, the electronic signal that results from processing data in the media file | '228 Patent: claim **3** |
| "To associate the audio file with the name" | **Definition:** to recognize an existing connection or to establish a connection between the electronic data representing the audio file and the electronic data representing the name | '228 Patent: claims **22** and **28** |
| "Configured to . . . communicate a collection of information comprising the name to the electronic device" | **Definition:** able to send at least the information necessary for the electronic device to display the name | '228 Patent: claims **22** and **28** |

## APPENDIX B

A "**person of ordinary skill in the art**" for the patents-in-suit is an individual with the equivalent of a four-year degree from an accredited institution (usually denoted in this country as a B.S. or Bachelor's degree) in Electrical Engineering (EE), Mechanical Engineering (ME), or Computer Science (CS, with at least two semesters of coursework in EE and/or ME), together with at least two years of experience working with, developing, or designing electronic devices with user interfaces. Advanced education in EE, ME, or CS might substitute for some of the experience, while extensive experience in working with, developing, or designing electronic devices with user interfaces might substitute for some of the educational requirements.

## APPENDIX C

The parties have agreed, or stipulated, to the following facts. This means that both sides agree these are facts. You must therefore treat these facts as having been proved.

1. The 2010 Hyundai Sonata is representative of all accused Hyundai vehicles.

2. The 2010 Kia Optima is representative of all accused Kia vehicles.

3. The 2010 Volkswagen Passat/Passat CC is representative of the accused Volkswagen vehicles with MDI located in the glove box.

4. The 2010 Volkswagen Golf TDI is representative of the accused Volkswagen vehicles with MDI located in the armrest.

5. The 2010 Audi A4/Q5 is representative of all accused Audi vehicles with AMI.

6. The 2010 Bentley Continental Flying Spur/Flying Spur Speed is representative of all accused Bentley vehicles with MDI.

7. At least one person has connected an iPod using a Kia iPod cable to a Kia head unit in the United States and controlled the iPod in accordance with the instructions provided in the owner's manual.